**SOUTH OMAHA TERMINAL RAILWAY COMPANY, INC., a corporation, Plaintiff,**

v.

**ARMOUR AND COMPANY, INC., a corporation, Defendant.**

**Civ. No. 71-0-297.**

United States District Court, D. Nebraska.

Feb. 21, 1974.

**642**

Einar Viren, Omaha, Neb., for plaintiff.

Donald H. Bowman, Lincoln, Neb., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This matter came on for trial on February 11, 1974, upon the filing of a complaint by South Omaha Terminal Railway Company, a common carrier incorporated under the laws of the State of Nebraska, operating wholly within that state. The defendant Armour and Company, Inc., is incorporated under the laws of the State of Delaware, having its principal place of business in a state other than Nebraska. The requisite amount in controversy is established and jurisdiction of this Court is present under 28 U.S.C. §§ 1332 and 1337.

The plaintiff's tracks are located in South Omaha, Nebraska, and for the period July 1, 1968, through September 19, 1968, the defendant shipper used the tracks of the plaintiff for the loading, unloading, switching and rerouting of rail cars for both local and interstate shipment. The amount in controversy represents demurrage fees for cars owned by the defendant or leased by the defendant from persons other than the plaintiff, for July 1, 1968, through September 19, 1968. The complaint in this case was filed on July 28, 1971, which date is critical as will become apparent.

At the outset, defendant contends that all causes of action set forth in the complaint, as amended, are barred by the applicable statute of limitations and this is the threshold question for determination in this case.[1]

The Interstate Commerce Act, 49 U. S.C. § 16(3)(a) and (e) provides that:

(a) All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after.

\* \* \* \* \* \*

(e) The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after.

In an order entered on May 17, 1972, this Court (Judge Richard A. Dier) held that the plaintiff's cause of action was barred by the statute of limitations, *supra*, for any cars delivered or tenderd for delivery by the plaintiff to the defendant prior to July 28, 1968, but inasmuch as the record did not at that time disclose which cars were delivered or

---

1. There have been two motions to dismiss filed herein based upon the statute of limitations. In opposition to the first motion, the plaintiff argued that an order of this Court entered by Chief Judge Robinson in Union Pacific Railroad Co. v. United States, 300 F.Supp. 318 (D.Neb.1969), enjoined the plaintiff from prosecuting its claim, and that

this matter was not resolved until the case was affirmed by the United States Supreme Court on November 10, 1969. However, on November 26, 1971, Judge Robinson held that the plaintiff had not at that time shown that it was bound by the order in *Union Pacific, supra*, and the plaintiff has made no further showing in this regard.

tendered prior to the July 28 date, Judge Dier set the matter for trial. Subsequently, at the trial before this Court, the undisputed evidence disclosed that *all* of the cars for which recovery of demurrage is now sought were delivered by the plaintiff to the defendant prior to July 28, 1968. This evidence, under the terms of the Order of May 17, 1972, *supra,* is clearly dispositive of the matter.

However, the plaintiff raises two arguments with respect to the running of the statute of limitations. First the plaintiff asserts that because of a demurrage-average agreement in effect at all relevant times between the plaintiff and the defendant, the cause of action herein did not accrue until July 31, 1968. Under a demurrage-average agreement, after delivery of a car by the plaintiff, the defendant has a certain number of free days within which to release the car back to the plaintiff. For each day a car is held past the free time, a debit is recorded for the defendant. For each day a car is released prior to the expiration of the free time, a credit is recorded for the defendant. At the end of the month a tally is made and the defendant pays demurrage charges if a debit balance is shown. The plaintiff argues that since no final accounting of the demurrage was made until July 31, no cause of action for demurrage for any of the July days accrued until the end of that month. The short answer to this argument is that it has already been rejected by this Court as clearly reflected in the Order of May 17, 1972. The Court now notes that Judge Dier's view of the effect of the demurrage-average agreement was subsequently shared in Baker v. Chamberlain Mfg. Corp., 356 F.Supp. 1314 (N.D.Ill.E.D.1973). In *Baker,* a case involving facts almost identical to those in the instant matter, the Court explained the difference between a system such as the one in issue in Arkansas Oak Flooring Co. v. Louisiana & Arkansas Ry. Co., 166 F.2d 98 (5th Cir. 1948), in which the applicable *rate* is not determined until the end of the time period, and a demurrage-average system in which the applicable rate is fixed but the units (debit days) are not totaled until the end of the time period:

In *Arkansas Oak* the applicable *rate* structure was wholly dependant upon compliance with the condition precedent to reship in an improved form within one year and consequently the rate in effect was factually and substantively indeterminable until the end of the conditional year and the rate could be considered not to have accrued until all conditions precedent were met with.

In our case, however, the rate was constant and inalterable and hence irrevocable, the only limitation being a procedural condition subsequent that the debits and credits be balanced on the last day of the month. The indeterminateness prior to the last day of the month therefore was not a factual or substantive one but rather a computational one. The amount owed in our situation accrued and was perfectly determinable on a factual level at any given point in the month in question and indefiniteness resulted only from the agreement between the parties to defer computation for any given day until the last day of the month. The fact that credits earned by early release of cars can offset debits goes to computational rather than factual indeterminateness since either party could if it wanted to subtract the credits, if any, from the debits on any given day of the month and factually determine what amount was owed at that juncture.

Hence there is a crucial difference between an "indeterminable amount" and an "amount not determined", the former being intrinsically factual while the latter is extrinsic to the facts and "not determined by agreement of the parties". While it is *conceivable* that the § 16(3)(a) 3-year statute of limitations does not begin to run in cases of factual indeterminateness such as *Arkansas Oak* until the point of *actual* determination, it is

clear in cases of computational indefiniteness such as ours that the § 16(3)(e) point of delivery is binding. This is precisely what the Court in Chesapeake & O. Ry. v. Wiener, *supra*, meant when it stated that "computing demurrage charges is one thing in that it fixes the amount of the charge and is quite apart from determining the time within which an action to collect such charges may be commenced, which has been fixed by statute." (58 N.W.2d at 919–920)

\* \* \* \* \* \*

Plaintiffs' major error lies in its misconstruing of the terms "accrue" and "come due" at least for the purposes of § 16(3)(e). *The statute is explicit that accrual under § 16(3)(e) is not synonymous or mutually interchangeable with collectability or dueness of the debt and that the point of delivery overrides any conventional notion of when an action judicially matures.* (Emphasis supplied) Indeed if the statute had meant to adhere to the general standards of allowing the statute of limitations to run from the point when the action could have been brought then § 16(3)(e) would have been totally superfluous. It is therefore clear that Congress anticipated the multitude of variations in periods of limitations that would result if conventional standards of triggering the period were used and promulgated § 16 (3)(a) and (e) in order to avoid such variation by creating a uniform time of accrual irrespective of when the action could have generally been brought.

356 F.Supp. at 1319–1321.

 The plaintiff's second argument is that the language "delivery or tender of delivery thereof by the carrier, and not after" in 49 U.S.C. § 16(3)(e) refers only to delivery of cars carrying a shipment *to* the defendant. Therefore, the plaintiff continues, for empty cars delivered to the defendant for loading and release to the plaintiff carrier, the "delivery or tender of delivery" is made by the defendant *to* the plaintiff, which in this case, occurred after the crucial date, July 28, 1968. The Court is aware of no case adopting such a view and interprets the plain wording of the statute to be exactly the opposite and controlling.

Accordingly, the Court has determined that the plaintiff's cause of action herein is barred by the applicable statute of limitations, and judgment will be entered by separate order of even date dismissing the plaintiff's complaint.