**Sonia CODOS, Plaintiff,**

v.

**NATIONAL DIAGNOSTIC CORP., a New York Corporation, Kalman Rosenberg, Raizel Rosenberg and Martin Stern, Defendants.**

**No. 88 CV 3350.**

United States District Court,
E.D. New York.

April 28, 1989.

Reichbart & Reichbart (Robert E. Margulies, of counsel), New York City, for plaintiff.

Proskauer Rose Goetz & Mendelsohn (Edward F. Westfield, of counsel), New York City, for defendants.

McLAUGHLIN, District Judge.

Defendants move pursuant to Fed.R.Civ. P. 12(b)(1) for an order dismissing the Complaint on the grounds that the Court lacks subject matter jurisdiction or that the Court should abstain from exercising jurisdiction. In the alternative, defendants seek an order staying all proceedings in this action pending the completion of a related state court action. For the reasons discussed below, the motion is granted.

### FACTS

#### I. THE COMPLAINT

The Complaint in this diversity action seeks the dissolution of the defendant National Diagnostic Corp. ("NDC"), a New York corporation located in Brooklyn, an accounting and the distribution of its assets. Plaintiff, a New Jersey citizen, owns approximately 31.25 percent of the shares of NDC and alleges that she is its largest

shareholder. Defendant Kalman Rosenberg is the Chairman of the Board and President of NDC. Defendant Raizel Rosenberg is a director. Defendant Stern is a director and an officer. All of the individual defendants are citizens of New York.

Count One of the Complaint alleges the following facts. NDC was established for the purpose of acting as a financial consultant to Screening Services, Inc. ("SSI"), a corporation that has ceased operations and has been essentially defunct since January 1988. As a result thereof, NDC no longer has a purpose for existence. Complaint ¶ 3. Plaintiff has demanded a meeting of the shareholders of NDC, but the demand was denied by defendant Kalman Rosenberg on behalf of NDC. *Id.* ¶ 4. Plaintiff has learned through another NDC shareholder, Oscar Folger, that NDC intends to disburse NDC funds held in a New Jersey bank to all shareholders other than plaintiff. *Id.* ¶¶ 2, 5.

Plaintiff further alleges that the individual defendants do not possess sufficient knowledge, skill and expertise to conduct the business of NDC and that they have failed to cause NDC to engage in any business since assuming control of the corporation. The Complaint does not state when control of NDC by the individual defendants was acquired. As a result of this conduct, NDC's assets have been unproductive. *Id.* ¶ 6. The Complaint further avers that "the directors and those in control of defendant NDC have engaged in oppressive and wrongful conduct towards plaintiff and have threatened to engage in illegal, fraudulent and otherwise wrongful conduct." *Id.* ¶ 7. No specific acts of misconduct, however, are identified.

Count Two alleges that the individual defendants have caused NDC to maintain funds in the New Jersey bank, notwithstanding that the assets do not serve any business purpose of the corporation and constitutes unnecessary excess reserves that should be distributed to the shareholders, including plaintiff. *Id.* ¶ 2.

This action was originally commenced in April 1988 in the United States District Court for the District of New Jersey. By order dated July 28, 1988, the action was dismissed for want of personal jurisdiction over NDC and the individual defendants.

## II. THE STATE COURT ACTION

The instant motion to dismiss, abstain or stay this action finds its foundation in an action pending in the Supreme Court of the State of New York, County of New York. The following relevant facts, as set forth in an affidavit of Kalman Rosenberg in support of this motion, are not disputed.

### 1. *Background*

When NDC was formed in May 1983, plaintiff, her husband William V. Codos and defendant Kalman Rosenberg comprised its board of directors and three of the four corporate officers. The fourth officer was one Joseph R. Brown. At that time, the shareholders were plaintiff, defendant Kalman Rosenberg, Brown and Folger. Affidavit of Kalman Rosenberg ¶¶ 3 & 4. In July 1983, William Codos purchased the stock of SSI. After the purchase, SSI and NDC had the same shareholders: plaintiff, defendant Kalman Rosenberg, Brown and Folger. *Id.* ¶¶ 6 & 7. On November 16, 1983, NDC and SSI entered into an agreement whereby SSI agreed to pay NDC a fee for NDC consulting services. One year later, the agreement was modified to reflect a change in the method of computing the fee due NDC. *Id.* ¶¶ 9 & 10.

In March 1985, defendant Kalman Rosenberg demanded a meeting for the election of NDC directors. When NDC failed to to notice a meeting, defendant Kalman Rosenberg called a shareholders meeting and held an election of directors on June 4, 1985. The individual defendants were elected to the board of directors, who, in turn, elected Kalman Rosenberg and defendant Stern as its officers. *Id.* ¶ 11. Plaintiff, her husband and Brown ("the Codos group") refused to recognize the new board of directors or relinquish control of NDC. *Id.* ¶ 12.

## 2. *The State Court Proceedings*

On December 9, 1985, defendant Kalman Rosenberg instituted a state court proceeding seeking to confirm the June 4, 1985 election of directors and officers. Upon commencement of the action, the New York Supreme Court issued a temporary restraining order ("TRO"), enjoining the Codos group from selling or otherwise transferring NDC assets except as necessary to conduct its regular business. *Id.* ¶ 13. The Court entered an order on June 10, 1987 confirming the June 4, 1985 elections and continuing the TRO. The order was affirmed by the Appellate Division, First Department on October 22, 1987. *Id.* ¶ 14. *See Rosenberg v. Codos*, 133 A.D.2d 1022, 519 N.Y.S.2d 990 (1st Dep't 1987).

The new board demanded that the Codos group relinquish the books and records of NDC. Upon their failure to comply with the demand, defendant Kalman Rosenberg moved in New York Supreme Court for an order holding William V. Codos in contempt. Affidavit of Kalman Rosenberg ¶ 15. Discovery ensued regarding the disposition of NDC assets. *Id.* ¶ 16. On May 20, 1988, the state court issued an order to show cause directing the Codos group and SSI to show cause why they should not be held in contempt. *Id.* ¶ 18. A hearing was scheduled for October 21, 1988, was adjourned to November 17, 1988, and is continuing. *Id.* ¶ 19.

Upon the dismissal of the federal court action in New Jersey, plaintiff filed the instant Complaint. Defendants now move to dismiss on the grounds that the Court does not have subject matter jurisdiction, that if jurisdiction exists, the Court should abstain from exercising it, or that the Court should stay this action pending resolution of the state court contempt proceedings. Defendants also seek to dismiss the Complaint because it is not verified and fails to specify any statutory authorization for a dissolution.

## DISCUSSION

Although not cited in her Complaint, the Court must assume that plaintiff seeks dissolution pursuant to N.Y.Bus.Corp.L. § 1104–a. Section 1104–a authorizes the holders of 20 percent or more of all outstanding shares of a corporation who are entitled to vote in an election of directors, to present a petition of dissolution on the ground that the directors or those in control of the corporation are guilty of "illegal, fraudulent or oppressive actions towards the complaining shareholders," N.Y. Bus.Corp.L. § 1104–a(a)(1), or that the property or assets of the corporation are being "looted, wasted or diverted for non-corporate purposes by its directors, officers or those in control of the corporation." *Id.* § 1104–a(a)(2). Section 1112 provides that any action or special proceeding seeking dissolution must be brought in the "supreme court in the judicial district in which the office of the corporation is located at the time of service." *Id.* § 1112.

Defendants maintain that the exclusivity provision of § 1112 operates to divest this court of jurisdiction to order an involuntary dissolution. At the outset, the Court notes that New York construes § 1112 as a venue provision, not a jurisdictional provision. *See In re: Elishewitz Hat Co.*, 42 Misc.2d 51, 52, 247 N.Y.S.2d 806, 808 (Sup.Ct. Kings Co. 1964). Indeed, § 1112 is entitled "Venue." *See* N.Y.Bus. Corp.L. § 1112. Jurisdiction is therefore not defeated on this ground. *See TBK Partners, Ltd. v. Western Union Corp.*, 517 F.Supp. 380, 388 (S.D.N.Y.1981), *aff'd*, 675 F.2d 456 (2d Cir.1982).

Even if § 1112 were not so construed, however, state legislatures have no power to expand or contract federal diversity jurisdiction. *See Beach v. Owens–Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); *Southern California Edison Co. v. Rice*, 685 F.2d 354, 357 (9th Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983); *Begay v. Kerr–McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir.1982). In *Chicago & Northwestern Ry. Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1872), the Supreme Court stated this principle as follows:

Whenever a general rule as to property or personal rights, or injuries to either, is

established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

*Id.* 80 U.S. at 286.

Merely concluding that the State cannot limit federal diversity jurisdiction does not end the inquiry here. Plaintiff seeks to invoke the equitable powers of this Court to order the dissolution of NDC.

The equitable powers of this Court are those that were administered by the English Court of Chancery in 1789. *See Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568, 59 S.Ct. 657, 659, 83 L.Ed. 987 (1939); *Barber v. Barber*, 62 U.S. (21 How.) 582, 604, 16 L.Ed. 226 (1859) (Daniel J., dissenting); *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 513 (2d Cir.1973) (Friendly, J.) (discussing *Barber*). The question presented here is whether the power to dissolve a corporation has devolved upon a federal district court.

In *Alkire v. Interstate Theatres Corp.*, 379 F.Supp. 1210 (D.Mass.1974), the question was answered in the negative. The court was "not convinced that a precise historical analogue to a decree of corporate dissolution existed in the English Court of Chancery." *Id.* at 1214.

The traditional view with respect to this issue as set forth in Pomeroy's Equity Jurisprudence and Equitable Remedies § 119 (1975) is as follows:

"It is well settled, with scarcely a dissenting voice, that in the absence of express statutory authority, a court of equity has no power to dissolve a corporation."

*Id.* The same result was reached in *Conklin v. United States Shipbuilding Co.*, 140 F. 219 (C.C.D.N.J.1905), *Hirsch v. Independent Steel Co.*, 196 F. 104, 108–09 (C.C.S.D. W.Va.1911), *appeal dismissed*, 225 U.S. 698, 32 S.Ct. 841, 56 L.Ed. 1263 (1912), and *D'Esopo v. Hanover Order of Owls Nest 131*, 7 F.Supp. 996, 1000 (M.D.Pa.1934).

Even if jurisdiction existed, the reasoning of these cases suggest that it is utterly unwise to exercise it. As the *Conklin* court points out:

[t]he corporation is the creature of the state. It derives its life from the state. It possesses the powers conferred by the state. The period of its existence is determined solely by the will of the state.

*Id.* at 222. *See Alkire, supra,* 379 F.Supp. at 1214.

The exercise of federal jurisdiction "would in effect permit the possibility of federal dissolution actions, based on [state dissolution] statute[s], being commenced in a number of different districts in which a particular [state] corporation was subject to service thereby placing an onerous burden on the corporation[,] Cf. *Weiss v. Routh*, 149 F.2d 193, 196 (2d Cir.1945) (L. Hand, C.J.), and possibly subjecting it to conflicting decisions." *Alkire, supra,* 379 F.Supp. at 1215.

Based on the foregoing, the Court concludes that it does not possess jurisdiction to order the relief sought, and that even if federal jurisdiction existed, it would decline the exercise thereof.

### CONCLUSION

Accordingly, defendants' motion to dismiss the Complaint for want of subject matter jurisdiction is hereby granted. The remaining grounds raised for dismissal are not reached.

SO ORDERED.