**In re ENGLISH SEAFOOD (USA) INC., Petitioner.**

**Civ. A. No. 89–599–JRR.**

United States District Court, D. Delaware.

July 9, 1990.

**282**

Edward P. Welch, Cathy J. Testa and Peggy L. Kerr, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., and New York City, for petitioner Wheeler's Restaurants PLC.

Henry A. Heiman of Heiman, Aber & Goldlust, Wilmington, Del., and Jack M. Platt, New York City, for respondent British Fish Development, Inc.

## OPINION

ROTH, District Judge.

This action is before the Court after removal by the respondent, British Fish Development, Inc. ("British Fish"), of a petition for corporate discontinuance and dissolution of English Seafood (USA) Inc. ("English Seafood"), filed by the petitioner, Wheeler's Restaurant PLC ("Wheeler"), in the Delaware Court of Chancery. British Fish and Wheeler are co-owners of English Seafood. British Fish removed this action to federal court on the ground that this Court possessed subject matter jurisdiction over the action based upon the parties' diversity of citizenship and the existence of an adequate amount in controversy under 28 U.S.C. §§ 1332(a) and 1441(a). Wheeler has moved for remand of the action back to the Delaware Court of Chancery on the grounds that this Court lacks subject matter jurisdiction, that it lacks the equity powers necessary to grant the relief requested, or that, even if it should have jurisdiction and equity powers, it should abstain from exercising them. For the reasons stated below, the motion to remand will be granted, and this action will be dismissed.

## BACKGROUND

Wheeler is a company which is organized under the laws of England and maintains its principal place of business there. It operates and franchises a popular chain of seafood restaurants in Great Britain. British Fish is incorporated under the laws of Florida and maintains its principal place of business in New York. In November, 1987, Wheeler and British Fish entered into a written "shareholders agreement" in which the two companies agreed to form a joint venture to develop and promote Wheeler's particular type of restaurants in the United States. Pursuant to the shareholders agreement, English Seafood was created and incorporated under the laws of Delaware on December 29, 1987. English Seafood's principal place of business is in New York. Wheeler and British Fish each own fifty percent of the stock of English Seafood under the shareholders agreement, and each made an equal initial capital contribution to this joint venture.

Under a separate "trademark and know-how license agreement," Wheeler granted to English Seafood exclusive rights to use and sublicense the Wheeler name and

method of operating seafood restaurants in the United States. British Fish is responsible for developing, promoting and financing English Seafood's first five restaurants, which are required under the agreements to be opened within the first five years of English Seafood's operations. British Fish and its two principals are responsible under the agreement for managing all aspects of English Seafood's operations, including the development of the new restaurants.

British Fish and its principals have succeeded in opening only one restaurant to date, in Atlanta, Georgia, and Wheeler perceives no other steps being taken by British Fish toward opening any other restaurants. Contentions have arisen between the parties. The Atlanta restaurant has lost money since its opening in October, 1988, and British Fish requested Wheeler to transmit funds to English Seafood in response to those losses. Wheeler complied with this request even though it believed British Fish alone was responsible for operating English Seafood.

British Fish filed a complaint against Wheeler in July, 1989, in the United States District Court for the Southern District of New York. British Fish alleged that Wheeler had breached the shareholders agreement by refusing to cooperate in the proper operation of English Seafood. British Fish also claimed that it had the right to exercise an option under the agreement between the parties by which British Fish could purchase Wheeler's entire interest in English Seafood. Wheeler filed a number of counter-claims, alleging fraud and mismanagement, against British Fish and its two principals. The parties filed cross-motions for summary judgment on British Fish's claims in that action; these motions are still pending decision by the district court.

On October 2, 1989, Wheeler filed a petition in the Delaware Court of Chancery for discontinuance and dissolution of English Seafood pursuant to section 273 of the Delaware General Corporation Law, 8 *Del. C.* § 273. This statute provides in pertinent part:

(a) If the stockholders of a corporation of this State, having only 2 stockholders each of which own 50% of the stock therein, shall be engaged in the prosecution of a joint venture and if such stockholders shall be unable to agree upon the desirability of discontinuing such joint venture and disposing of the assets used in such venture, either stockholder may file with Court of Chancery a petition stating that it desires to discontinue such joint venture and to dispose of the assets used in such venture in accordance with a plan to be agreed upon by both stockholders or that, if no such plan shall be agreed upon by both stockholders, the corporation be dissolved....

(b) Unless both stockholders file with the Court of Chancery (1) within 3 months of the date of the filing of such petition, a certificate similarly executed and acknowledged stating that they have agreed on such plan, or a modification thereof, and (2) within 1 year from the date of the filing of such petition, a certificate similarly executed and acknowledged stating the distribution provided by such plan has been completed, the Court of Chancery may dissolve such corporation and may by appointment of 1 or more trustees or receivers with all the powers and title of a trustee or receiver appointed under § 279 of this title, administer and wind up its affairs. Either or both of the above periods may be extended by agreement of the stockholders, evidenced by a certificate similarly executed, acknowledged and filed with the Court of Chancery prior to the expiration of such period.

The parties have not agreed to a plan of dissolution. Instead, on October 31, 1989, British Fish filed a notice of removal of the dissolution action to this Court. British Fish intends next to move for transfer of this action from this district to the Southern District of New York, for consolidation with the action already proceeding there. Currently before the Court is Wheeler's motion to remand the dissolution action back to the Delaware Court of Chancery.

## DISCUSSION

Wheeler's motion to remand is based on three alternative grounds presented in successive fashion. It argues that remand is appropriate because: (1) this Court lacks subject matter jurisdiction; (2) this Court lacks the equity power necessary to grant the relief requested, and thus lacks "equity jurisdiction"; or (3) even if this Court possesses both jurisdiction and the requisite equity power, it should abstain from exercising them, and remand the action to the state court. Each argument will be addressed in turn.

### Subject Matter Jurisdiction

Wheeler argues that removal of the dissolution action to federal court was improper because this Court does not have original subject matter jurisdiction over such a cause of action. See 28 U.S.C. § 1441(a) (only civil actions over which federal courts have original jurisdiction may be removed from state to federal court). It asserts that the dissolution action is not adversarial in nature and that there exists no "controversy" between the parties over which this Court may exercise diversity jurisdiction.

Wheeler bases its argument on the observations of the Delaware Court of Chancery in *In re Arthur Treacher's Fish & Chips of Ft. Lauderdale, Inc.*, 386 A.2d 1162 (Del.Ch.1978). One of the parties owning fifty percent of the stock of the Arthur Treacher's corporation filed a petition for corporate dissolution pursuant to section 273. The other stockholder responded to the petition by filing several counterclaims against the petitioner in the Court of Chancery.

The petitioner in *Arthur Treacher's* moved for dismissal of these counterclaims, arguing that "to permit such claims to be asserted ... would transform a petition for a corporate dissolution into an adversary proceeding contrary to the intent and purpose of the statute" and further that section 273 "does not contemplate opposing parties and ... it necessarily follows that petitioner and respondent are therefore not such parties, thus precluding the assertion of a counterclaim." *Arthur Treacher's*, 386 A.2d at 1164. The Chancellor agreed with petitioner's position and dismissed the counterclaims, finding that in a section 273 action the stockholders' individual interests are affected only indirectly and that the proceeding had not from the outset been against an opposing party. The Chancellor concluded that the fact that petitioner might gain a benefit from the action was not in and of itself sufficient in a section 273 dissolution to permit the filing of counterclaims. *Id.* at 1165–66. The Delaware Court of Chancery later relied upon the *Arthur Treacher's* decision for the proposition that "[a]ctions which are adversarial in nature" cannot be raised in a section 273 proceeding. *In re Cambridge Fin. Group, Ltd.*, No. 9279 slip op. at 7–8 (Del.Ch. Nov. 9, 1987) (available on Westlaw at 1987 WL 19677 slip op. at 3).

■ Wheeler argues that the *Arthur Treacher's* decision provides clear authority for the proposition that a section 273 action does not involve an adversarial proceeding. Wheeler therefore asserts that this federal court can not exercise diversity jurisdiction over the dissolution action because there is no "controversy" between the citizens of different states.[1] This argument must be rejected for two reasons. First, it is incorrect to state that a section 273 proceeding is non-adversarial. Second, the jurisdiction of a federal court cannot be narrowed by the remedial creations of a state legislature.

---

1. Wheeler also contends that a section 273 action does not constitute a controversy between the parties because it is essentially a *quasi in rem* proceeding. Such distinctions between *in personam* and *in rem* or *quasi in rem* proceedings in regard to jurisdictional disputes have been viewed as inapt for some time now. *Shaffer v. Heitner*, 433 U.S. 186, 205–06, 97 S.Ct. 2569, 2580–81, 53 L.Ed.2d 683 (1977); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 312–13, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); *see also Pennsylvania v. Williams*, 294 U.S. 176, 180, 55 S.Ct. 380, 382, 79 L.Ed. 841 (1935) (noting no doubt as to federal subject matter jurisdiction over suit for liquidation of property comprised of building and loan association's holdings).

Rather than constituting a non-adversarial proceeding, a section 273 action in reality involves an adversarial proceeding designed for summary disposition of a narrow range of considerations:

> In taking cognizance of only a narrow set of issues, Section 273 closely resembles several other sections of Title 8 of Delaware's Code which provide for narrowly-focused proceedings. Through these provisions, our state's corporation law creates a number of causes of action calling for expedited and, in some cases, summary adjudication when it may be detrimental to the orderly and proper governance of the corporation to delay adjudication. In such proceedings, this court may eschew collateral matters and strike otherwise permissible counterclaims.

*In re Data Processing Consultants, Ltd.,* No. 8907 slip op. at 14 (Del.Ch. Nov. 25, 1987) (available on Westlaw at 1987 WL 25360 slip op. at 5). One cannot argue that a particular form of proceeding is not a civil action or controversy simply because it is designed to be limited in scope and summary in nature. *Famous Realty, Inc. v. Flota Mercante Grancolombiana, S.A.,* 81 F.Supp. 553, 555 (E.D.N.Y.1948); *State ex rel. Glassell v. Shell Petroleum Corp.,* 20 F.Supp. 795, 797–98 (W.D.La.1937); *accord Colonial Bank & Trust Co. v. Cahill,* 424 F.Supp. 1200, 1203 (N.D.Ill.1976).

Thus, the holding of *Arthur Treacher's* was not that section 273 actions are non-adversarial. The *Arthur Treacher's* court held only that the respondent in that action could not assert extraneous counterclaims in an action designed to be summary in nature and addressed to only limited issues. The respondent could assert the facts underlying some of his proposed counterclaims as defenses within the section 273 action, since those allegations were directly pertinent to the court's decision of whether it was appropriate to grant the equitable relief requested by the petitioner. *In re Southern One–Stop, Inc.,* No. 7500 slip op. at 2 (Del.Ch. Dec. 3, 1986) (available on Westlaw at 1986 WL 13978) ("The correct reading of [*Arthur Treacher's* ] is that the Court refused to permit a counterclaim

for a seized corporate opportunity in a dissolution case but allowed the defendant to assert that a conspiracy existed to compel an improper dissolution.").

The adversarial nature of corporate dissolution actions under section 273 is also evidenced by the Chancery Court's utilization of traditional pretrial and trial proceedings in those actions. *See In re Venture Advisers, Inc.,* No. 9439 slip op. (Del.Ch. Dec. 1, 1988) (available on Westlaw at 1988 WL 127096) (considering respondent's motion for summary judgment to dismiss petition due to failure of prerequisites for suit under section 273 and denying motion due to material facts in dispute); *Bachmann v. Ontell,* No. 7805 slip op. at 1 (Del.Ch. Nov. 7, 1984) (available on Westlaw at 1984 WL 21204) ("an alleged inequitable plan or motivation in bringing the [section 273] action might well constitute a matter of defense"); *In re Arthur Treacher's Fish & Chips,* No. 5357 slip op. at 4, 7 (Del.Ch. Oct. 16, 1980) (available on Lexis, States library, Del. file) (section 273 action was "tried pursuant to a pre-trial stipulation and order"; court should consider defenses of illegality, actual fraud, bad faith or compensable injury); *Arthur Treacher's,* 386 A.2d at 1167 (court will consider respondent stockholder's contention of conspiracy to defraud as objection to dissolution).

Thus, we find from our consideration of the nature of a section 273 proceeding that this action is an adversary proceeding and that there is diversity of citizenship between Wheeler and British Fish, the parties now before us.

Moreover, Wheeler's argument that this Court cannot exercise subject matter jurisdiction over a section 273 dissolution action, because of the nature of such proceedings, must be rejected for a second and more fundamental reason. As we discuss more fully below, a state statute that creates a remedy or type of proceeding cannot narrow the jurisdiction of the federal courts. If a state statute creates a substantive equitable right, a federal court may exercise its diversity jurisdiction over a controversy between the parties concerning that substantive right, and may apply the state

remedy or procedures, but only to the extent the federal court deems appropriate. The Third Circuit Court of Appeals stated this basic rule that, if a state legislature creates a substantive right,

> [t]he right so created will be enforced by the remedies prescribed by the [state] act, so far as the same are consistent with and not violative of the general equitable rules and procedure, as administered in federal courts of equity. But such courts are not obliged to depart from their own rules and conform to the procedure prescribed by the statute, if such procedure is inconsistent with or unknown to the equitable practice obtaining in federal courts. Such courts may adapt their own equitable procedure to the adjudication of the right and the attainment of the relief established and prescribed by the state statute, when once on other grounds they have jurisdiction of the case. The equitable right established by state law may be dissociated from the mere procedure prescribed by such law for its enforcement.

*Land Title & Trust Co. v. Asphalt Co. of America*, 127 F. 1, 19–20 (C.C.D.N.J.1903); *accord Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497–99, 43 S.Ct. 454, 455–57, 67 L.Ed. 763 (1923) (state statute's remedial provisions cannot enlarge or narrow scope of federal subject matter jurisdiction). This rule has been reiterated through the years in decisions of the Supreme Court such as *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

For the reasons we state in the following section, we conclude that the federal courts do have equity powers to dissolve corporations created under the laws of Delaware, and thus we do have subject matter jurisdiction of this dispute. Moreover, in accepting in this Court a section 273 action originally filed in the Court of Chancery, we are not limited by any state court ruling on the restrictions applicable to the summary nature of a particular state dissolution proceeding.

### Federal Equity Powers

Wheeler's second argument for remand of this action to the Delaware Court of Chancery is that federal courts lack the equity power to order the dissolution of the charter of a corporation created under the laws of a state. Wheeler concedes that federal courts have the equity power to supervise the disposition of a corporation's assets and business dealings, to liquidate those assets and to wind-up the affairs of a corporation. However, Wheeler contends that a federal court is powerless to take the next and final step—the termination of a corporation's existence as an entity recognized at law. This argument must be rejected.

As the Third Circuit stated in *Land Title & Trust Co. v. Asphalt Co. of America*, 127 F. 1, 18 (C.C.D.N.J.1903), when a state legislature has created a substantive equity right that can be claimed by a particular party, a federal court has the general equity power to protect and enforce that substantive right. The substantive equity right created by section 273 of the Delaware General Corporation Law is a stockholder's right to protect his investment in a corporation, the operations of which have become paralyzed by corporate deadlock. In *Moran v. Edson*, 493 F.2d 400 (3d Cir. 1974), the Third Circuit held that such a statute, providing for corporate dissolution due to deadlock,

> implements the general rule that a court of equity may appoint a receiver when there are such dissensions in the board of directors of a corporation or between two groups of its stockholders, each holding an equal number of shares, that it is impossible to carry on the business with advantage to the parties interested, even though the corporation is solvent. And in such a case the court may direct the sale of the corporate property for the protection of the creditors and benefit of the stockholders and order a dissolution of the corporation.

*Id.* at 407–08 (citing 16 Fletcher, Cyclopedia Corporations § 7713); *accord Saltz v. Saltz Bros., Inc.*, 84 F.2d 246, 248 (D.C. Cir.), *cert. denied*, 299 U.S. 567, 57 S.Ct. 31, 81 L.Ed. 418 (1936); *Arents v. Blackwell's Durham Tobacco Co.*, 101 F. 338, 344–46 (C.C.E.D.N.C.1900), *aff'd without opinion*

*sub nom. Guthrie v. Arents,* 109 F. 1058 (C.C.D.N.C.1901); *Whitman v. Fuqua,* 549 F.Supp. 315, 322–23 (W.D.Pa.1982); *Campbell v. Pennsylvania Indus., Inc.,* 99 F.Supp. 199, 204–05 (D.Del.1951); *Securities and Exch. Comm'n v. Fiscal Fund, Inc.,* 48 F.Supp. 712, 715 (D.Del.1943).

The decisions of other courts, upon which Wheeler relies, have failed to observe this rule. *Alkire v. Interstate Theatres Corp.,* 379 F.Supp. 1210, 1213–15 (D.Mass.1974); *accord Hirsch v. Independent Steel Co. of America,* 196 F. 104, 108–09 (C.C.S.D.W. Va.1911), *appeal dismissed sub nom. Hirsh v. Taylor,* 225 U.S. 698, 32 S.Ct. 841, 56 L.Ed. 1263 (1912); *Conklin v. United States Shipbuilding Co.,* 140 F. 219, 222 (C.C.D.N.J.1905); *Codos v. National Diagnostic Corp.,* 711 F.Supp. 75, 77–78 (E.D.N.Y.1989); *American Fabrics Co. v. Couturier,* 65 F.Supp. 563, 564–65 (N.D.Ala. 1946). An examination of the *Alkire* decision illustrates the reasons for which we must reject the view taken in these decisions.

The *Alkire* court observed that the "inherent equity powers of a federal court are those which were administered by the English Court of Chancery in 1789." *Alkire,* 379 F.Supp. at 1214. That general observation is correct. However, the court then concluded that it was

not convinced that a precise historical analogue to a decree of corporate dissolution existed in the English Court of Chancery.

The traditional view with respect to this issue as set forth in Pomeroy's Equity Jurisprudence and Equitable Remedies § 119 (1905) is as follows: "It is well settled, with scarcely a dissenting voice, that in the absence of express statutory authority, a court of equity has no power to dissolve a corporation."

*Id.* (citation omitted). Wheeler relies upon the *Alkire* court's conclusion for its position that federal courts have no equity power to order a corporate dissolution because the English Court of Chancery did not possess a precisely analogous power to order the dissolution of corporate charters that were issued by the Crown or Parliament in England.

However, the *Alkire* court erred in its consideration of the impact of a state statute upon federal subject matter jurisdiction. The court failed to consider the manner in which a state statute can function as an "express statutory" creation of a substantive right that is protectable under a federal court's general equity powers. *Land Title,* 127 F. at 18–20. This interrelation of state substantive rights and federal equity practice is consonant with the doctrines set forth in *Pusey & Jones Co. v. Hanssen,* 261 U.S. 491, 497–99, 43 S.Ct. 454, 455–57, 67 L.Ed. 763 (1923) (state statute's *remedial* provisions cannot narrow or enlarge federal subject matter jurisdiction), and *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (federal court exercising diversity jurisdiction must look to state *substantive* law).

Rather than inquire as to whether the applicable state statute created a substantive right enforceable under the doctrine of *Erie,* the *Alkire* court simply viewed that state statute's remedial provisions as conclusive. The *Alkire* court thus concluded that the terms of the Massachusetts statute at issue gave exclusive subject matter jurisdiction to the Supreme Judicial Court of that state and that a federal court therefore lacked the equity power to grant the relief requested. *Alkire,* 379 F.Supp. at 1215. This conclusion conflicts directly with the rule of *Pusey & Jones,* and ignores the mandates of *Erie.*

The better view of how these doctrines interrelate was stated by the Third Circuit as follows:

in so far as equitable remedies are concerned federal courts are to grant them in accordance with their own rules which have been developed out of the English Chancery practice. The words of Mr. Justice Frankfurter in the [*Sprague v. Ticonic National Bank,* 307 U.S. 161 [59 S.Ct. 777, 83 L.Ed. 1184] (1939) ] case are a plain indication that the rule enunciated in [*Payne v. Hook,* 7 Wall. 425, 430 [19 L.Ed. 260] (1868) ], "The equity jurisdiction conferred on the Federal Courts is

the same that the High Court of Chancery in England possesses; is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union", is the law so far at least as the granting of equitable remedies is concerned. The rule of [*Erie*] being determinative of substantive rights, there is still preserved to the federal courts a uniform basis for granting equitable remedies in cases in which substantive rights have arisen under state law.

*Black & Yates, Inc. v. Mahogany Ass'n,* 129 F.2d 227, 233 (3d Cir.), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); *accord Tower Hill–Connellsville Coke Co. of W.Va. v. Piedmont Coal Co.,* 64 F.2d 817, 827–28 (4th Cir.), *cert. denied,* 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 582 (1933); *Smith v. Aeolian Co.,* 53 F.Supp. 636, 638 (D.Conn.1943); S. Symons, Pomeroy's Treatise on Equity Jurisprudence § 293 (5th ed. 1941). Our inquiry, then, is whether section 273 of the Delaware General Corporation Law, 8 *Del.C.* § 273, creates a substantive right. If such a substantive right was created by the provisions of section 273, then this Court has the general equitable power to protect and enforce such a right held by a litigant with whatever remedies we find necessary and appropriate.

We find that section 273 does create such a substantive right. The statute recognizes the validity of a joint venture corporation with two fifty-percent shareholders. In addition to each party's normal substantive right in the property he has invested in such a joint venture, *see, e.g.,* S. Symons, Pomeroy's Treatise on Equity Jurisprudence § 94 (discussing types of property rights to which equitable remedies may attach), section 273 creates a further right under certain circumstances to remove that interest from the corporation through corporate dissolution. Section 273 provides that a shareholder in such an evenly-divided corporation has the right to assert control over the disposition of his investment in the assets of that corporation without the agreement of the other shareholder. Each shareholder thus possesses the right

to have his investment protected from depletion or loss due to a deadlock between the two fifty-percent shareholders and a resultant paralysis in the corporation's ability to conduct business and fulfill the purpose for which it was created. *See In re Venture Advisers, Inc.,* No. 9439 slip op. at 7 (Del. Ch. Dec. 1, 1988) (available on Westlaw at 1988 WL 127096 slip op. at 3) (section 273 provides fifty-percent shareholder with ability to invoke involuntary dissolution); *In re Data Processing Consultants, Ltd.,* No. 8907 slip op. at 3–4 (Del. Ch. Nov. 25, 1987) (available on Westlaw at 1987 WL 25360 slip op. at 1) (same); *In re Arthur Treacher's Fish & Chips,* No. 5357 slip op. at 8 (Del.Ch. Oct. 16, 1980) (available on Lexis, States library, Del. file) (same); *see also Moran,* 493 F.2d at 407–08 (such statutes permit federal courts to protect stockholders' interests when corporation deadlocked).

We therefore conclude that this federal Court has the equity power to grant the appropriate relief necessary to protect Wheeler's investment in the assets of English Seafood from depletion due to alleged deadlock between the shareholders of that corporation.

### Abstention

■ Wheeler asserts as a third ground for remand of this action to the Delaware Court of Chancery that this federal Court should abstain from exercising its subject matter jurisdiction and equity powers. For the reasons discussed below, the motion for remand will be granted on this ground.

Although we do not agree with the *Alkire* court in its other legal conclusions, we agree with its overriding concern that federal courts should abstain from interfering with the development and administration of the complex statutory schemes that states have devised to regulate corporations created under their laws. The *Alkire* court warned that exercise of federal jurisdiction "would in effect permit the possibility of federal dissolution actions, based on [a state statute], being commenced in a number of different districts in which a particular ... corporation was subject to service,

thereby placing an onerous burden upon the corporation, and possibly subjecting it to conflicting decisions." *Alkire v. Interstate Theatres Corp.*, 379 F.Supp. 1210, 1215 (D.Mass.1974) (citation omitted); *accord Codos v. National Diagnostic Corp.*, 711 F.Supp. 75, 78 (E.D.N.Y.1989); *see also Conklin v. United States Shipbuilding Co.*, 140 F. 219, 222 (C.C.D.N.J.1905) ("The corporation is a creature of the state. It derives its life from the state. It possesses the powers conferred by the state.").

We find that abstention is required in this case. The state of Delaware has a strong interest in the formation and termination of corporations under its laws and in the uniform development and application of the statutory scheme that the state legislature and courts have created to regulate those corporations. *See, e.g., Smith v. Metropolitan Property & Liab. Ins. Co.*, 629 F.2d 757, 760–61 (2d Cir.1980) (abstention proper to avoid interference with state's strong interest in statutory scheme for regulating insurance industry); *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 565 (2d Cir.1978) (abstention proper to avoid interference with development and application of state statutory scheme for consumer protection). We do not find that the scope of legal issues under Delaware's corporation law concerning such an involuntary dissolution are sufficiently settled to make abstention unnecessary.

This case is similar to that addressed by the Supreme Court in *Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935), in which the Court held that a federal court should not interfere with the liquidation of an insolvent building and loan association under a state regulatory scheme where there was no indication that the rights of private parties would be injured as a result of such abstention. The Court observed that "[i]t has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state." *Id.* at 185, 55 S.Ct. at 385; *accord Meredith v. Winter Haven*, 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9

(1943) (federal courts may abstain from exercising jurisdiction to grant equitable relief such as that addressed in *Williams*); *Smith v. Aeolian Co.*, 53 F.Supp. 636, 639 (D.Conn.1943) (applying abstention doctrine of *Williams* in action for dissolution of solvent corporation). The form of abstention addressed in *Williams* is such that a federal court should dismiss the action and remand it to the appropriate state forum.

## CONCLUSION

For the reasons discussed above, Wheeler's motion to remand this action to the Delaware Court of Chancery is granted, and this action is dismissed. In view of our findings that this Court possesses subject matter jurisdiction over an action of this type, we do not find that removal of this action was improper so as to justify the award of costs to Wheeler pursuant to 28 U.S.C. § 1447(c).