

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-8-1995

# MCI Telecomm. Corp. v. Teleconcepts, Inc.

Precedential or Non-Precedential:

Docket 94-5426

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"MCI Telecomm. Corp. v. Teleconcepts, Inc." (1995). *1995 Decisions.* Paper 303.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/303

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5426


MCI TELECOMMUNICATIONS CORPORATION

v.

TELECONCEPTS, INCORPORATION,
           Defendant/Third-Party Plaintiff-
                                    Appellant

v.

BELL OF PENNSYLVANIA,
           Third-Party Defendant-Appellee

TELECONCEPTS, INCORPORATION,
           Appellant.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 92-244)


Argued:  March 1, 1995
Before:  GREENBERG, NYGAARD and McKEE, Circuit Judges.
(Filed December 8, 1995


                    CHARLES J. CASALE, JR. (Argued)
                    396 Whitehorse Avenue
                    Trenton, New Jersey  08610

                    Attorney for Defendant/Third
                    Party Plaintiff-Appellant
                    Teleconcepts, Inc.

                    KENNETH M. DENTI (Argued)
                    Duane, Morris & Heckscher
                    Sagemore Corporate Center


1

8000 Sagemore Drive, Suite 8303

Marlton, New Jersey  08053
Attorney for Plaintiff-
Appellee

MCI Telecommunications Corp.

LISA M. BELLINO (Argued)
Marks, O'Neill, Reilly &
  O'Brien, P.C.
1234 Market Street, Suite 1910
Philadelphia, PA  19107

Attorney for Third-Party
Defendant-Appellee
Bell of Pennsylvania

OPINION OF THE COURT

McKEE, Circuit Judge

MCI Telecommunications ("MCI"), a long distance telecommunications service provider, has sued Teleconcepts to recover the cost of services MCI provided under MCI's Federal Communications Commission tariff ("FCC tariff").  Teleconcepts raised the untimely service of the complaint and the statute of limitations as defenses, and also brought a third-party action against Bell of Pennsylvania ("Bell"), Teleconcepts' local telephone exchange carrier.  Bell disclaimed liability under the terms of its Pennsylvania Public Utility Commission Tariff ("PUC Tariff").  The district court held that the action was not time-barred and that "good cause" existed for the late service of the complaint.  The court also granted summary judgment to both MCI

2

and Bell holding that the FCC and PUC tariffs both placed the responsibility for unauthorized telephone calls on Teleconcepts.

Because we find that MCI's action was partially barred by the statute of limitations, and that the doctrine of primary jurisdiction required the district court to transfer the third-party complaint to the Pennsylvania Public Utility Commission, we will reverse in part and remand for further proceedings.

## I. FACTUAL BACKGROUND

Teleconcepts owns coin operated telephones – commonly referred to as "pay phones" – that it places on the premises of various businesses. MCI supplied long distance telephone service to Teleconcepts from January 1988 through March 1990 under the terms and conditions of the tariff MCI had filed with the Federal Communications Commission. When Teleconcepts' pay phones are used, Teleconcepts incurs a cost to Bell of Pennsylvania for the use of Bell's telephone lines. The monthly bill for the line charges also includes the customer's long distance charges for the preceding month. Teleconcepts' November 1989 bills from MCI for long distance calls included long distance service charges for international telephone calls in excess of $7,000. Teleconcepts was billed under six different account numbers, which presumably represent six different Teleconcepts' pay phones. The November charges exceeded prior months' long distance charges to such an extent that Teleconcepts was certain that a billing error had occurred, and so informed Bell. However, since Bell was merely a conduit for billing long distance

3

charges, it responded by telling Teleconcepts to contact its long distance carrier – MCI.

Teleconcepts contacted MCI and informed it of the numerous long distance calls to the Dominican Republic and Puerto Rico that Teleconcepts believed had not been made from any of its phones and requested a credit.  When MCI refused, Teleconcepts told MCI that it would not pay for these long distance charges, but MCI continued to provide long distance service.  When Teleconcepts received its December bills it discovered over $13,000 in doubtful charges to Puerto Rico and the Dominican Republic.  Teleconcepts again refused to pay these charges.

On December 27, 1989, MCI notified Teleconcepts that its long distance service was terminated.  However, for some reason, MCI failed to terminate long distance service until the following March.  In the interim, Teleconcepts continued to receive bills containing exorbitant long distance charges, and Teleconcepts continued to refuse to pay.  Finally, MCI sued Teleconcepts to recover the amount of unpaid charges for long distance services MCI had provided to Teleconcepts through March 1990 – $47,565.84.

Eventually, Teleconcepts came to believe that the questioned telephone calls had resulted from a fraudulent process known as "hacking."[0]  This occurred when a person called an 800 number on

---

[0] It is unclear exactly when Teleconcepts first learned that it may have been a "hacking" victim.  In an affidavit filed in the district court, John Goida, president of Teleconcepts, states he learned generally of the fraudulent "hacking" process during an unrelated phone conversation with an employee in Bell's fraud division, and he deduced that this is what happened to his pay phones.

a pay phone and remained silent until the receiving party hung up. A second dial tone would then be given to the 800 caller who could then call anywhere he or she desired without placing any additional coins in the telephone.

On January 15, 1992, MCI filed its initial summons and complaint in an effort to collect the unpaid charges from Teleconcepts. MCI attempted service through the Mercer County Sheriff's Department, but its initial attempt was unsuccessful. Service was eventually made on June 25, 1992. Teleconcepts responded by filing a third-party complaint against Bell of Pennsylvania in which it alleged that Bell was responsible for the defect in the dial tone that allowed the illegal "hacking" and that Bell should therefore indemnify Teleconcepts for any liability it may have to MCI.[0] Teleconcepts eventually moved to dismiss the complaint because MCI had failed to effect service of process within 120 days of filing of the complaint as required by Federal Rule of Civil Procedure 4(j). In an order dated September 15, 1992, the district court denied Teleconcepts' motion to dismiss MCI's complaint finding that "good cause" excused the late service.

Subsequently, the parties filed cross-motions for summary judgment. Teleconcepts claimed that MCI's action was untimely since it was not filed within the two year statute of limitations contained in the Communications Act. Teleconcepts argued that MCI's cause of action accrued either when it refused to pay the

---

[0] It appears that the defect in the dial tone has since been remedied.

5

November 1989 bills, or at the latest, on December 27, 1989, when MCI gave notice that Teleconcepts' long distance services were terminated.  MCI countered by arguing that its action was timely because Teleconcepts' services continued until March 1990 despite the December 27, 1989 disconnect notice.  MCI further argued that under a 30 day payment provision of its federal tariff, final payment of the bills would not become due until either April 1990, or January 27, 1990, at the earliest even accepting Teleconcepts' position.  Thus, MCI claimed the operative date for commencing an action was either March or April of 1992, or at the earliest, January 27, 1992.

The district court denied Teleconcepts' motion for summary judgment in a memorandum opinion and order dated December 28, 1993.  Additionally, the court held that MCI's federal tariff placed responsibility for unauthorized calls on Teleconcepts, and thus, granted MCI's cross-motion for summary judgment.  The court also granted MCI's request for attorney's fees and, in a separate memorandum opinion and order dated February 25, 1994, determined the reasonable amount of such fees to be $11,812.50.  The court also held that the PUC tariff placed responsibility for unauthorized calls on payphone owners, and therefore granted summary judgment in favor of Bell and against Teleconcepts in a memorandum and order entered on June 20, 1994.

On appeal, Teleconcepts challenges the district court's denial of its motion to dismiss for failure to timely serve the complaint, the denial of its motion for summary judgment on the

6

statute of limitations defense, the grant of summary judgment in favor of Bell, and the amount of the attorney's fee award.

## II. DISCUSSION

## A. Appellate Jurisdiction

We must first determine whether we have jurisdiction to review the issues raised by Teleconcepts on appeal. The notice of appeal reads as follows:

> Teleconcepts, Inc., defendant-third party plaintiff appeals to the United States Court of Appeals for the Third Circuit from an order of summary judgment disposing the remaining claims of the District Court for the District of New Jersey entered in this case June 20, 1994, in favor of third party defendant, Bell of Pennsylvania and December 28, 1993 in favor of plaintiff, MCI Telecommunications, Inc.

App. at 1.

Federal Rule of Appellate Procedure 3(c) provides, in pertinent part, that a notice of appeal "must designate the judgment, order or part thereof appealed from . . . ." Fed. R. App. P. 3(c). If a party does not satisfy the requirements of Federal Rule of Appellate Procedure 3(c), then the appellate court does not acquire jurisdiction over the undesignated issues. United States v. Rivera Constr. Co., 863 F.2d 293, 298 (3d Cir. 1988). Even though the notice of appeal does not mention the September 15, 1992 order (denying Teleconcepts' motion to dismiss) or the district court's February 25, 1994 memorandum and order (calculating MCI's award of reasonable attorney's fees), Teleconcepts challenges both of these decisions in its brief to this court. MCI argues that we did not acquire jurisdiction over

7

these issues since these orders are neither directly nor indirectly referred to in the notice of appeal. Appellee's brief at 6.

"Our jurisprudence liberally construes notices of appeals." Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir. 1990). Thus, we have held that it is proper to exercise appellate jurisdiction over orders not specified in the notice of appeal if "`there is a connection between the specified and unspecified order, the intention to appeal the unspecified order is apparent and the opposing party is not prejudiced and has a full opportunity to brief the issues.'" Lusardi v. Xerox Corp., 975 F.2d 964, 972 (3d Cir. 1992) (quoting Williams v. Guzzardi, 875 F.2d 46, 49 (3d Cir. 1989)). These factors are present here.

We have repeatedly held that "`since . . . only a final judgment or order is appealable, the appeal of a final judgment draws into question all prior non-final orders and rulings.'" Drinkwater, 904 F.2d at 858 (quoting Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1253 (3d Cir. 1977)). Teleconcepts could not appeal the September 15, 1992 order denying its motion to dismiss MCI's complaint until the district court filed the December 28, 1993 order of summary judgment in favor of MCI. Moreover, in disposing of the remaining issues, the December 28, 1993 memorandum opinion refers to the district court's September 15, 1992 order denying Teleconcepts' motion to dismiss. Thus, the requisite connection is present.

Similarly, while the notice of appeal does not refer to the February 25, 1994 memorandum and order calculating MCI's award of

8

reasonable attorney's fees, an adequate connection exists between a specified order that designates the prevailing party for purposes of attorney's fees and an unspecified order that quantifies the attorney's fee award.  See Bernardsville Bd. of Educ. v. J.H., 42 F.2d 149, 156 n.10 (3d Cir. 1994).  Since the December 28, 1993 order specifically granted MCI's request for attorney's fees and merely directed MCI to file an affidavit of reasonable attorney's fees, there is an adequate connection between these two orders.

Moreover, MCI is not prejudiced as it had an opportunity to brief the disputed issues, and has done so.  See id. at 156 n.10.  Accordingly, we hold that we have jurisdiction to review the September 15, 1992 order denying Teleconcepts' motion to dismiss and the February 25, 1994 memorandum and order calculating an award of attorney's fees.

## B. Subject Matter Jurisdiction

Before addressing the substantive issues raised by Teleconcepts we must determine if the district court had subject matter jurisdiction over MCI's action against Teleconcepts in the first place.  While neither the district court nor Teleconcepts ever raised this issue we have an obligation to do so *sua sponte.* See Medlin v. Boeing Vertol Co., 620 F.2d 957, 960 (3d Cir. 1980); Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d 1254, 1256 (3d Cir. 1977).

MCI's action is based upon Teleconcepts' failure to pay MCI for long distance telephone service MCI provided under the terms and conditions set forth in MCI's FCC Tariff.  MCI alleges that

9

since it is required to collect the charges on the services specified in the tariff under § 203 of the Communications Act of 1934, 47 U.S.C. § 203 (1982), subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1337, and the Communications Act of 1934, 47 U.S.C. §151, et seq. (1982).[0]

While this circuit has never addressed whether the collection of unpaid charges for long distance telephone service under an FCC tariff "arises under" federal law (28 U.S.C. § 1331) or an act of Congress regulating commerce (28 U.S.C. § 1337) the majority of courts of appeals that have addressed this issue have answered in the affirmative. See Western Union Int'l, Inc. v. Data Dev., Inc., 41 F.3d 1494 (11th Cir. 1995); MCI Telecommunications Corp. v. Graham, 7 F.3d 477 (6th Cir. 1993); MCI Telecommunications Corp. v. Garden State Inv. Corp., 981 F.2d 385 (8th Cir. 1992); Ivy Broadcasting Co., Inc. v. Am. Tel. & Tel. Co., 391 F.2d 486 (2d Cir. 1968). But see MCI Telecommunications Corp. v. Credit Builders of Am., Inc., 980 F.2d 1021 (5th Cir. 1993), vacated, ___ U.S. ___, 113 S.Ct. 2925 (1993), prior opinion reinstated, 2 F.3d 103 (5th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 472 (1993).

In Richman Bros. Records, Inc. v. U.S. Sprint Communications Co., 953 F.2d 1431, 1438 (3d Cir. 1991), we held that the

---

[0]     28 U.S.C. § 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S. C. § 1337(a) provides, in part, that "[t]he district courts shall have original jurisdiction of any civil action of proceeding arising under any Act of Congress regulating commerce or protecting trade and against restraints and monopolies . . . ."

10

district court had jurisdiction over Sprint's action under a tariff filed with the FCC pursuant to 28 U.S.C. § 1337(a). However, we did not question jurisdiction because there was diversity of citizenship and we would thus have had jurisdiction even if federal question jurisdiction failed. See id. Given the subsequent decisions of our sister circuits and the lack of diversity here, we now undertake this analysis.

Those courts of appeals that have held that subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and/or 1337(a), reason that a claim for unpaid long distance charges "arises under" an act of Congress regulating commerce (the Communications Act) because the claim relies on tariffs that must be filed with the FCC.[0] See Western Union, 41 F.3d at 1496; Graham, 7 F.3d at 479; Garden State Inv., 981 F.2d at 388; Ivy Broadcasting, 391 F.2d at 493–494. The lone appellate court to hold otherwise reasons that the federal common law is appropriate in only a "few and restricted" circumstances and doubts that collection of a delinquent phone bill falls within these limited circumstances. See Credit Builders, 980 F.2d at 1022–23.

This specific issue was first addressed in Ivy Broadcasting Co., Inc. v. Am. Tel. & Tel., supra. There, the district court *sua sponte* dismissed a suit against A.T. & T. that arose from

---

[0] Although some courts that have addressed this issue have relied upon § 1331 and others have relied upon § 1337, there is no difference in these two bases of subject matter jurisdiction for purposes of our present analysis. See Medlin, 620 F.2d at 962–963 ("The 'arising under' requirement of section 1337 has been interpreted to be the same as that found in 28 U.S.C. § 1331 . . . . ."); Yancoskie v. Delaware River Port Authority, 528 F.2d 722, 725 (3d Cir. 1975) (same).

problems that had occurred during a transmission over A.T. & T.'s telephone wires. The court reasoned that claims for negligence and breach of contract did not arise out of the Communications Act but were founded on tort and contract law, and that the counterclaim was merely an action for services rendered that also lacked a federal jurisdictional basis. On appeal the United States Court of Appeals for the Second Circuit noted that since the complaint did not allege a specific violation of the Communications Act, 47 U.S.C. § 207 did not confer jurisdiction. Nevertheless, the court reasoned that the broad scheme of federal regulation of communications carriers indicated a congressional intent to occupy the field to the exclusion of state law. See Ivy Broadcasting, 391 F.2d at 490.

> It seems to us that the congressional purpose can be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards.

Id. at 491.

The court concluded that since federal law controlled, the suit "arose under" the laws of the United States as required by 28 U.S.C. § 1331.

> The word 'laws' in § 1331 should be construed to include laws created by federal judicial decision as well as by congressional legislation. The rational of the 1875 grant of federal question jurisdiction -- to insure the availability of a forum designed to minimize the danger of hostility toward, and specially suited to the vindication of, federally created rights -- is as applicable to judicially created rights as to rights created by statute.

12

Id. at 492.

The court also held that 28 U.S.C. § 1337 provided jurisdiction over the counterclaims.

> The Communications Act of 1934 is an 'Act of Congress regulating commerce' within the meaning of [§ 1337.] Since we conclude that the counterclaims arise under the Communications Act insofar as they rely upon tariffs which the Act requires to be filed with the FCC, we hold that [§ 1337] gives the district court jurisdiction over so much of the counterclaims as relies upon such tariffs.

Id. at 494 (footnote omitted) (citations omitted). The court's analysis relied heavily upon an analogous inquiry of the Supreme Court under the Commerce Act in Louisville & N. R. v. Rice, 247 U.S. 201, 202 (1918).

Several other courts have employed the reasoning of Ivy Broadcasting to hold that federal district courts have subject matter jurisdiction over actions for unpaid charges for services provided under an FCC tariff. In MCI Telecommunications Corp. v. Garden State Inv. Corp, supra, MCI sued to recover unpaid telecommunications charges, and the district court dismissed the complaint *sua sponte* because the complaint did not allege a specific violation of the Communications Act. The court reasoned that there was no need for uniform federal common law governing claims to collect unpaid telecommunication service charges, and that there was therefore no basis for the exercise of subject matter jurisdiction.

13

The United States Court of Appeals for the Eighth Circuit relied heavily upon Supreme Court decisions involving federal jurisdiction under the Commerce Act to reverse. (i.e. Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533 (1983) (per curiam)).[0] See Garden State Inv., 981 F.2d at 387-88. The court reasoned that:

> the district court failed to recognize that a claim arises under federal law when a right created by federal law is an essential element of the plaintiff's action. The district court stated MCI's claim brought under an FCC tariff 'is simply a contract action seeking to recover payment for services rendered.' The district court's characterization of MCI's claim overlooks the fact that federal tariffs are the law, not mere contracts. Although a user's refusal to pay charges fixed by a tariff will often arise in the context of a broken contract, the carrier's claim for payment is necessarily based on the filed tariff.

Id. at 387 (citations omitted).

In analogous circumstances, the United States Court of Appeals for the Sixth Circuit reversed the district court's *sua sponte* dismissal for lack of federal jurisdiction in MCI Telecommunications Corp. v. Graham, supra. The court held that MCI's ability to sue was based upon its FCC tariff, and therefore was rooted in federal law. See Graham, 7 F.3d at 479-80. As in Ivy Broadcasting, the court was persuaded by similarities between the Communications Act and the Commerce Act and was guided by

---

[0] In Thurston, the Court rejected the Ninth Circuit Court of Appeals' argument that a carrier's action for payment of transportation services was a "simple contract collection action." Garden State Investment, supra, at 387 (citing Thurston, 460 U.S. at 533)

14

Thurston, Rice and the analysis of the United States Court of Appeals for the Second Circuit in Ivy Broadcasting. "[I]t would be incongruous to impose a different jurisdictional rule under the Communications Act than under the Commerce Act." Id. at 480. See also Western Union, 41 F.3d at 1496-97 (subject matter jurisdiction over a claim for unpaid telecommunications service charges existed under 28 U.S.C. § 1331 and 28 U.S.C. § 1337).

Only MCI Telecommunications Corp. v. Credit Builders of Am., Inc., supra, reached a contrary result. There, a supplier of telecommunications services appealed the district court's determination that a suit to collect unpaid telecommunications charges lacked a jurisdictional basis. On appeal, the plaintiff argued that the district court had independent federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction over matters arising out of the Communications Act under 28 U.S.C. § 1337.

The United States Court of Appeals for the Fifth Circuit began its analysis by noting that:
> the Supreme Court has stated that a case
> arises under federal law if 'it really and
> substantially involves a dispute or
> controversy respecting the validity,
> construction, or effect of such a law, upon
> the determination of which the result
> depends.'

Credit Builders, 980 F.2d at 1022 (citations omitted).

The court was not persuaded by the reasoning of Ivy Broadcasting. Instead, the court reasoned that:
> [a]s the Supreme Court has emphasized, the
> federal common law is appropriate in only a
> 'few and restricted' circumstances. Milwaukee
> v. Illinois, 451 U.S. 304, 313, 101 S.Ct.
> 1784, 1790, 68 L.Ed.2d 114 (1981). In Texas

15

> Industries, Inc. v. Radcliff Materials, Inc.,
> 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68
> L.Ed.2d 500 (1981), the Supreme Court went on
> to state that 'absent some congressional
> authorization to formulate substantive rules
> of decision, federal common law exists only
> in such narrow areas as those concerned with
> the rights and obligations of the United
> States, interstate and international disputes
> implicating the conflicting rights of States
> or our relations with foreign nations, and
> admiralty cases.' We do not believe that this
> case to collect a delinquent telephone bill
> falls within these limited instances.

Id. at 1022-23. The court held that for these same reasons §1337 did not confer federal question jurisdiction, and that plaintiff's action for breach of contract or quantum meruit was a creature of state law.

We are not persuaded by the analysis in Credit Builders. MCI's action is based upon, and draws its life from, the tariff that MCI filed with the Federal Communications Commission. The reasoning of Ivy Broadcasting, and the analogous cases decided under the Commerce Act, see Thurston and Rice, supra, persuade us that the district court did have subject matter jurisdiction over MCI's action, and Teleconcepts' counterclaim. However, there are other jurisdictional problems with that counterclaim which we discuss in more detail below.

### C. Late Service of the Complaint.

When the district court denied Teleconcepts' motion to dismiss for failure to timely serve the complaint, Federal Rule of Civil Procedure 4(j) read in pertinent part:

> **Summons: Time Limit for Service.** If a
> service of the summons and complaint is not
> made upon a defendant within 120 days after

16

> the filing of the complaint and the party on
> whose behalf such service was required cannot
> show good cause why such service was not made
> within that period, the action shall be
> dismissed as to that defendant without
> prejudice upon the court's own initiative
> with notice to such party or upon motion.

Fed. R. Civ. P. 4(j).[0]

The district court was thus required to dismiss MCI's action if process was not served within 120 days of the filing of the complaint unless MCI could show good cause for the delinquency. See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1304 (3d Cir. 1995).

MCI filed its initial summons and complaint on January 15, 1992. The papers were returned unserved by the Mercer County Sheriff's Department marked "unable to locate, unknown at address given" on February 25, 1992. MCI requested an alias summons on or about March 12, 1992, after it discovered another address for service. The alias summons was returned on an "unknown date" and forwarded for service on or about May 29, 1992. Service of process was eventually achieved at this alternate address on June 25, 1992, well over a month after the 120 days prescribed by Rule 4(j) had lapsed. MCI never made a request for an extension of time.

The district court found that "good cause" excused the late service, and denied Teleconcepts' motion to dismiss the complaint. Our review of the district court's finding of "good

---

[0] As of December 1, 1993, Rule 4(j) was amended and redesignated Rule 4(m). We discuss the significance of this amendment infra.

cause" is for an abuse of discretion. See Lovelace v. Acme

Markets, Inc., 820 F.2d 81, 83 (3d Cir.), cert. denied, 484 U.S.

965, 108 S.Ct. 455 (1987); Braxton v. United States, 817 F.2d

238, 242 (3d Cir. 1987).

The district court did not articulate the factor(s) it

believed constituted "good cause." The court initially orally

denied Teleconcepts' motion to dismiss during the following

exchange in a telephone conference:

> THE COURT: All right. Now, the defendant
> moved to dismiss the complaint pursuant to
> Rule 4(j), which provides for dismissal
> unless good cause be shown. I would like to
> hear from the defendant before I rule.
>
> MR. REILLY: Your Honor, after I received the
> response from the plaintiff regarding my
> client's address as 51 Everett Street in
> Princeton, he informed me that that's been
> his address. I understand that he may not
> have been there at the time when the Sheriff
> initially went out. The problem I have with
> the argument is that they did serve him
> eventually at another -- at his residence.
>
> THE COURT: Yes.
>
> MR. REILLY: And that was some four months
> after the initial issuance of the summons and
> complaint, which I still feel is an
> inordinate amount of time --
>
> THE COURT: Well, I've seen no prejudice. The
> remedy if good cause were not shown would be
> dismissal without prejudice and re-service.
> Under the circumstances, I certainly find
> good cause has been shown. Motion is denied.
> The defendant will answer, move or otherwise
> plead.

Subsequently, the district court memorialized this decision

in the written order of September 15, 1992. In that order, the

court stated merely that "good cause" had been shown and that the motion to dismiss was denied for the reasons set forth on the record.

Although the district court felt that Teleconcepts had not been prejudiced by the late service, absence of prejudice alone can never constitute good cause to excuse late service. See United States v. Nuttall, 122 F.R.D. 163, 166-67 (D. Del. 1988) (courts have considered three factors in determining the existence of good cause: (1) reasonableness of plaintiff's efforts to serve (2) prejudice to the defendant by lack of timely service and (3) whether plaintiff moved for an enlargement of time to serve). We have equated "good cause" with the concept of "excusable neglect" of Federal Rule of Civil Procedure 6(b)(2), which requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." See Petrucelli, 46 F.3d at 1312 (Becker, J., concurring in part and dissenting in part).[0] Thus, while the prejudice may tip the

---

[0]      Fed. R. Civ. P 6(b) provides in pertinent part:

> **Enlargement.** When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be dome where the failure to act was the result of excusable neglect . . . .

19

"good cause" scale, the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place. Such "justifications" are conspicuously absent in the district court's oral decision and its subsequent written order. Moreover, the briefs to this court are silent on this issue and the parties have therefore not assisted in divining the "good cause" that the district court found. In addition, our review of the entire record has uncovered only one reference to the "good cause" which the court may have felt supported late service. In MCI's brief in opposition to Teleconcepts' motion to dismiss MCI states:

> good cause is shown because service could not be made at the address given as the registered address for service of process at the time the complaint was filed. It was necessary to make additional attempts at service by locating another address and requesting an alias summons.

App. at 35.

Even if we were to speculate and conclude that this was the basis for the district court's finding of "good cause," we would have to conclude that it was an abuse of discretion. The summons was returned unserved on February 28, 1992. MCI learned of Teleconcepts' alternative address as early as March 12, 1992, and requested an alias summons on or about that same date. Inexplicably, the summons was not forwarded for service until on or about May 29, 1992, and not served at this alternate address until June 25, 1992, well beyond the time limit prescribed by Rule 4(j). MCI never moved for an extension of time.

20

Nothing on this record explains why it took MCI over three months after it learned of Teleconcepts' alternate address to serve Teleconcepts. Moreover, the record does not explain why MCI never filed a motion to enlarge the time to serve. See Lovelace, 820 F.2d at 85 (alternative means of service and the ability to extend the time indicate a lack of diligence and weigh against a finding of good cause). Since we are presented with no explanations as to what, if any, circumstances constitute sufficient "good cause" to excuse MCI's apparent lack of diligence, we hold that the district court abused its discretion in finding that good cause existed to excuse the late service. See Braxton, 817 F.2d at 242 (good cause does not exist when there is an "unexplained delinquency on the part of the process server and lack of oversight by counsel").

Reversal of a district court's finding that good cause existed to excuse late service results in the dismissal of an action, but such dismissal is without prejudice to the plaintiff. Accordingly, the party can refile the complaint and receive a new 120 day period to serve process. See Petrucelli, 46 F.3d at 1304 n.6.

However, as of December 1, 1993, Rule 4(j) was amended and redesignated Rule 4(m). Rule 4(m) provides, in part, that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion, or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effectuated within a specified time; provided that if the plaintiff shows good cause for the failure,

21

> the court shall extend the time for service
> for an appropriate period.

Fed. R. Civ. P. 4(m).

We recently addressed the significance of this amendment in Petrucelli v. Bohringer, supra. There, we read Rule 4(m) "to require a court to extend time if good cause is shown and to allow a court discretion to dismiss or extend time absent a showing of good cause." Petrucelli, 46 F.3d at 1305. Here the statute of limitations is in issue. In Petrucelli, we emphasized that the expiration of the statute of limitations does not require the court to extend the time for service, as the court has discretion to dismiss the case even if the refiling of the action is barred. See id. at 1306. We also noted that Rule 4(m) should apply retroactively, to all matters pending at the time it became effective "insofar as just and practicable." Id. at 1305 (quoting The Order of the United States Supreme Court Adopting and Amending the Federal Rules of Civil Procedure (April 22, 1993)). Here, such retroactive application is both just and practicable as the district court has already made a determination that there is some basis to excuse MCI's lack of diligence. As a result, the district court would have discretion to allow MCI's action to proceed upon remand under Rule 4(m) even though we have determined that no "good cause" was shown under Rule 4(j).

> [A]s a result of the rule change which led to Rule
> 4(m), when entertaining a motion to extend time for
> service, the district court must proceed in the
> following manner. First, the district court should

22

> determine whether good cause exists for an extension of time.  If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.

Id. at 1305.  Moreover, the expiration of the statute of limitations does not prohibit the district court from extending the time for service.  See id. at 1305-06.

The parties here apparently do not consider the substantive changes to Rule 4(j) significant to our analysis as neither has mentioned the amendment of Rule 4(j) or cited Petrucelli. However, we find Petrucelli's interpretation of the amendment to Rule 4(j) and its retroactive impact dispositive to the issues before us.

Accordingly, even though we have determined that the district court abused its discretion in inexplicably finding "good cause" for MCI's lack of diligence, the retroactive effect of Rule 4(m) means that the district court had the discretion to allow this action to proceed even in the absence of "good cause." We view the district court's decision to extend time as an exercise of its discretion under that Rule, and therefore, we affirm the district court's denial of Teleconcepts' motion to dismiss.

### D. Statute of Limitations

Teleconcepts argues that the district court improperly denied its motion for summary judgment based upon the statute of limitations.  The Communications Act of 1934, provides that "[a]ll actions at law by carriers for recovery of their lawful

charges, or any part thereof, shall be begun, within two years from the time the cause of action accrues, and not thereafter." 47 U.S.C. § 415(a) (1982). The Act further states that a cause of action "in respect of the transmission of a message shall, for the purposes of this section, be deemed to accrue upon delivery . . . . thereof by the carrier and not thereafter." 47 U.S.C. §415(e) (1982). However, as noted above, MCI's FCC tariff provides that "MCI's bills are payable upon receipt. Amounts not paid within 30 days after the date of the invoice will be considered past due . . . ."

In the district court, Teleconcepts argued that payment was due when it received the bills for long distance service in November 1989, and MCI's cause of action accrued when these bills went unpaid. Teleconcepts also argued that, even if the "past due" standard were used, the cause of action accrued in December 1989; and that the latest possible accrual date was December 27, 1989, when MCI issued its letter terminating service. Since MCI's action was filed more that two years from any of these potential accrual dates, Teleconcepts concludes that the action was untimely.

The district court rejected this position reasoning that "[i]n an action involving collection of accounts receivable, common sense dictates that in determining the tolling date of the applicable statute of limitations, this court must look to the date upon which payment was demanded and refused." MCI Telecommunications Corp. v. Teleconcepts, Inc., No. 92-244, slip op. at 5 (D.N.J. December 28, 1993). The court concluded that

24

MCI had until April 16, 1992 – two years after Teleconcepts failed to remit payment of its final invoice of March 17, 1990 – to initiate this action.  Moreover, the court suggested that even if it were to focus on the December 27, 1989 termination letter, payment would not be due until January 26, 1990 (allowing for the 30 day period contained in the tariff).  Since MCI filed the complaint on January 15, 1992, the court concluded it was timely and denied Teleconcepts' motion for summary judgment.

Our review of the district court's denial of Teleconcepts' summary judgment motion is plenary.  See Gulfstream II Assoc., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 429 (3d Cir. 1993); Schafer v. Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh, Pa., 903 F.2d 243, 246 (3d Cir. 1990).  It is clear that our analysis is controlled by 47 U.S.C. § 415(a).  However, we must determine when a cause of action "accrues" for purposes of that statue.

In resolving this issue of first impression, Teleconcepts urges us to be guided by the numerous decisions that have construed the statute of limitations in the Commerce Act, see 49 U.S.C. § 16(3) (repealed 1978)[0], on which § 415 was based.  See Pennsylvania R. Co. v. Carolina Portland Cement Co., 16 F.2d 760 (4th Cir. 1927); South Omaha Terminal Ry. Co., Inc. v. Armour & Co., Inc., 373 F. Supp. 641, (D. Neb. 1974); Baker v. Chamberlain Mfg. Corp., 356 F. Supp. 1314, (N.D. Ill. 1973).  In those cases

---

[0] In 1978, after the cases relied upon by Teleconcepts had been decided, 49 U.S.C. § 16(3) was repealed and replaced with 49 U.S.C. § 11706.

the courts ruled that a carrier's action to recover charges accrues when delivery is made or tendered, irrespective of what occurs subsequent to delivery. Teleconcepts reasons by analogy that MCI's cause of action accrued when it transmitted the long distance signals (i.e. "tendered delivery") in October 1989. Appellant's brief at 24.

We do not find this argument persuasive. At the time the cases Teleconcepts relies upon were decided the Commerce Act provided that "[t]he cause of action in respect to a shipment of property shall, for purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after." 49 U.S.C. §16(3)(e) (repealed 1978).[0] However, the Commerce Act is designed:

> to fix one date on which all causes of action, both those in favor of shipper and those in favor of carrier, with respect to any particular shipment, should be deemed to have accrued, so that, in the application of the section limiting time for suit, a situation would not arise wherein claims in favor of one party arising out of a particular shipment would be barred and those in favor of the other party not be barred.

Pennsylvania R. Co., 16 F.2d at 761.

Although the explanation of "accrues" in § 415(e) is similar to that contained in the corresponding provision of the Commerce Act, those two provisions rest upon totally different policy considerations.

---

[0] "Accrual" is now defined in 49 U.S.C. § 11706(g) which states "[a] claim related to a shipment of property accrues under this section on delivery or tender of delivery by the carrier." 49 U.S.C. § 11706 (1982)

26

> The [Commerce Act] is explicit that accrual under § 16(3)(e) is n
> synonymous or mutually interchangeable with collectability or due
> of the debt and that the point of delivery overrides any conventi
> notion of when an action judicially matures. . . . [C]ongress
> anticipated the multitude of variations in the period of limitati
> that would result if conventional standards of triggering the per
> were used and promulgated 16(3)(a) and (e) in order to avoid such
> variation by creating a uniform time of accrual irrespective of w
> the action could have generally been brought.

South Omaha Terminal Ry. Co., 373 F. Supp. at 644.  Different consideration
the conflict is between a telecommunications company and its customer.  It
nonsensical to conclude that a cause of action to collect charges for trans
telephone call accrues when a message is delivered.  Such a rule would allo
sue a customer as soon as the carrier completes a telephone connection even
customer has not refused to pay, and even if the customer has given every i
it would pay upon receipt of an accurate bill.  When a call is completed, t
typically not even billed for the service, and the customer has every right
it will not incur any liability so long as it pays the bill that is expecte
future time.

However, where a customer seeks redress from a telecommunications carr
the improper transmission of a telecommunications signal, it is reasonable
that the cause of action in favor of the customer does arise when the messa
or tendered.  It is then that the customer reasonably should know of the al
See Central Scott Tel. Co. v. Teleconnect Long Distance Servs. & Sys. Co.,
1317, 1320-21 (S.D. Iowa 1993)[0] (the court relied upon the FCC's declaration
only "concerns a carrier's liability to its customers for failure to transm
accordance with its common carrier obligations").  See also Anchorage Tel.
Alascom, Inc., 4 FCC Rcd. 2472 (1989) ("Section 415(e) is concerned with a
liability to its customer for failure to transmit a message . . .");  MCI

---

[0]    Citing Williams Telecommunications Group, Inc. v. The Chesapeake
Tel. Cos., 8 FCC Rcd. 1161, ¶ 16 n.35 (1993).

27

Telecommunications Corp. v. Pac. Bell Tel. Co., 5 F.C.C. Rcd. 3462 (1990) (

is inapplicable to MCI's complaints. That Section concerns a carrier's liab

customers . . .").

We agree that the limitations period contained in § 415(e) applies to

by the carrier's customer that  allege a breach of a common carrier's oblig

to an action against the customer.  Accordingly, here, the statute of limit

purposes of § 415(a) accrues with "discovery of the right or wrong or of th

which such knowledge is chargeable in law."  Central Scott Tel. Co., 832 F.

MCI's tariff tells us when that occurred.  Under that tariff, "MCI's bills

upon receipt," however, "[a]mounts not paid within 30 days after the date o

will be considered past due . . . ."  We must give these words their ordina

See Strite v. McGinnes, 330 F.2d 234, 239 (3d Cir.), cert. denied, 379 U.S.

(the words employed are given "their plain and ordinary meaning, except whe

in which they are used renders then a different denotation, or where legal

words are used and it is clear from their use that the legal or technical m

intended.").  Teleconcepts' obligations became past due 30 days after the d

particular invoice.  It is therefore only then that MCI's cause of action u

accrued, and it is at that point that the two year clock started ticking.

Moreover, Teleconcepts' duty (both under the tariff and as reflected b

billing practice) is akin to an obligation to make installment payments.  "

installment contract, a new cause of action arises from the date each payme

Board of Trustees of the Dist. No. 15 Machinists' Pension Fund v. Kahle Eng

F.3d 852, 857 (3d Cir. 1994) (citing 4 A. Corbin, *Corbin on Contracts* § 951

"[T]he statute of limitations runs against each installment from the time i

that is, from the time when an action might be brought to recover it."  Id.

(quoting 51 Am.Jur.2d: Limitations of Actions § 133).  See also Metromedia

Mountain Assoc., 655 A.2d 1379, 1380–81 (N.J. 1995) (contract between lesse

28

whereby lessor was to reimburse lessee for lessee's use of an independent c

treated like an installment contract and thus a new cause of action subject

limitations period accrued for each month that lessor failed to reimburse t

Kiamichi Electric Cooperative v. Underwood, 842 P.2d 358, 359-60 (Okla. Ct.

(electric cooperative's contract to provide electricity was akin to install

and thus each monthly installment due constituted a new cause of action wit

statute of limitations).

> The period fixed by a statute of limitations begins to run from t
> 'accrual of the cause of action.' Since 'cause of action' is so
> uncertain and variable a concept, serious injustice may be done u
> the court uses judicial discretion in applying such a statute in
> case of 'partial' breaches of a single contract. No doubt there
> much authority for the statement that where separate actions woul
> for a series of breaches, the statute operates against each one
> separately as of the time when each one could have been brought,
> that this rule is not affected by the fact that after two or more
> breaches have occurred the plaintiff must join them all in one ca
> of action. Of course, if an action for a first instalment is bar
> by the statute, it can not be properly included in an action for
> installments that are not yet barred.

Corbin, supra, § 951, at 823-24.

Here, MCI first accrued a cause of action on December 8, 1989 -- 30 da

date of the November 8, 1989 long distance bills. Additional causes of act

days after the date of each of MCI's subsequent bills. MCI could have inst

recover payment on any one bill, or brought an action as they did to recove

all of them. However, for MCI's action to have been timely as to all of th

have been filed within two years of the date on which a cause of action acc

partial breach. See Kahle Engineering Corp., 43 F.3d at 861 (action barred

unpaid installments which came due prior to six year statute of limitations

Metromedia, 655 A.2d at 1381; Corbin, supra, § 951, at 823-24.

Thus, MCI's action is untimely as to the amounts owed in the bills dat

1989, November 15, 1989, and December 8, 1989. MCI's cause of action for t

accrued on December 8, 1989, December 15, 1989 and January 8, 1990, respect[...]
the complaint was not filed until January 15, 1992, recovery for those bill[...]
the two year statute of limitations of § 415(a).

However, MCI's action is timely as to all subsequent bills. Accordingl[...]
maintain its suit for amounts owing on the bills dated December 15, 1989;[0] [...]
1990; January 9, 1990; February 8, 1990; March 8, 1990; and March 17, 1990.[...]

Accordingly, we reverse the judgment of the district court and remand [...]
to deduct from its judgment the amount of the bills dated November 8, 1989, [...]
1989, and December 8, 1989 and to recalculate the award of prejudgment inte[...]
accordingly.

### E. Attorney's Fees

Teleconcepts challenges the award of attorney's fees arguing that hour[...]
MCI's counsel were "clearly excessive," since there was no discovery and mo[...]
merely involved the preparation of pleadings. See Appellant's brief at 32-[...]

The district court must exercise its informed discretion in awarding a[...]
See Pawlak v. Greenawalt, 713 F.2d 972, 977 (3d Cir. 1983), cert. denied, 4[...]
(1984). Thus, our standard of review is a narrow one. "We can find an abus[...]
if no reasonable [person] would adopt the district court's view. If reason[...]
could differ as to the propriety of the action taken by the trial court, th[...]
said that the trial court abused its discretion." Silberman v. Bogle, 683 F[...]
Cir. 1982) (citation omitted).

The district court was familiar with the efforts of counsel, and condu[...]
review of the time that counsel spent working on this case. The court foun[...]
"actual hours claimed were in fact reasonably expended by counsel." MCI
Telecommunications Corp. v. Teleconcepts, Inc., No. 92-244, slip op. at 3 ([...]

---

[0] Suit was instituted two years to the day from the date the cause of a[...]
on this bill.

25, 1994).  Teleconcepts does not specify how the district court abused its

its review, and we do not think that any such abuse of discretion occurred.

we affirm the award of attorney's fees. However, in view of our ruling on t

limitations, the district court should, upon remand, make whatever review o

fees it feels warranted and adjust the prior award of fees if the court fee

reduction or adjustment is now appropriate.  We do not, however, take any p

whether the court should make any such adjustment.

### F. Third-Party claim

Finally, Teleconcepts argues that the district court erred in granting

judgment in favor of third-party defendant, Bell.  Our review of this grant

judgment is plenary. See <u>Gulfstream II</u>, 995 F.2d at 429.

Teleconcepts maintains it is entitled to be indemnified for any liabil

MCI because Bell allowed the fraudulent "hacking" to occur by furnishing a

tone.  Teleconcepts' third-party complaint does not allege the basis for th

court's subject matter jurisdiction, nor does the district court state the

jurisdiction.  However, since there was no independent basis for subject ma

jurisdiction over that claim, we believe that the district court exercised

jurisdiction based on the FCC tariff.  <u>See</u> 28 U.S.C. § 1367 (Supp. 1993).[0]

Congress codified the judicially created doctrines of pendent and anci

jurisdiction under the name "Supplemental Jurisdiction" at 28 U.S.C. § 1367

embodies the jurisdictional standard established in <u>United Mine Workers of</u>

<u>Gibbs</u>, 383 U.S. 715 (1966).  <u>See</u> <u>Lyon v. Whisman</u>, 45 F.3d 758, 760 (3d Cir.

<u>Sinclair v. Soniform, Inc.</u>, 935 F.2d 599, 603 (3d Cir. 1991).  Accordingly,

requirements must be satisfied before a federal court may exercise suppleme

jurisdiction.  "The federal claim must have substance sufficient to confer

_____

[0]     Diversity jurisdiction is clearly inapplicable since the amount in co
not exceed $50,000.  <u>See</u> 28 U.S.C. §1332 (1988).

31

jurisdiction on the court." <u>Gibbs</u>, 383 U.S. at 725. The state and federal

derive from a common nucleus of operative facts, and the claims must be suc

would ordinarily be expected to be tried in one judicial proceeding. <u>See i</u>

F.3d at 760.

We believe that the third party complaint satisfies the prerequisites

28 U.S.C. §§ 1331, and 1337 confer subject matter jurisdiction over MCI's c

action and Teleconcepts' third-party action both arise out of the fraudulen

activity which purportedly resulted in exorbitant long distance charges. M

and prudent use of judicial resources dictate that these claims be tried in

proceeding. Accordingly, the third-party action meets the test for supplem

jurisdiction.

However, our inquiry does not end there. Bell argues that the tariff

the Pennsylvania Public Utilities Commission ("P.U.C.") places responsibili

unauthorized calls upon Teleconcepts. That tariff provides in pertinent pa

COCOT[0]. . . [s]ervice subscriber is considered as the Customer of Record and

responsible for all rates and charges associated with the service, . . . ."

the third-party complaint therefore turns upon the interpretation and appli

PUC tariff. We must therefore determine if the doctrine of primary jurisdi

> Primary jurisdiction `applies where a claim is originally cogniza
> in the courts, and comes into play whenever enforcement of the cl
> requires resolution of issues which, under a regulatory scheme, h
> been placed within the special competence of an administrative bo
> In contrast, when the legislature provides an agency with 'exclus
> primary jurisdiction,' it preempts the courts' original jurisdict
> over the subject matter.

<u>Greate Bay Hotel & Casino v. Tose</u>, 34 F.3d 1227, 1230 n.5. (3d Cir. 1994) (

omitted). If a legislature has vested an administrative agency with exclus

---

[0] "COCOT" is an acronym for "Customer-Owned Coin-Operated Telephone
parties agree that Teleconcepts is a COCOT within the meaning of that term
tariff.

jurisdiction, that agency is the only forum in which complaints within that

may be brought.  Id. at 1230.  Even though the parties have not raised the

exclusive primary jurisdiction, we must determine if the third-party compla

heard by the PUC in the first instance.[0]  We are mindful of the fact that th

primary jurisdiction:

> is not simply a polite gesture of deference to the agency seeking
> advisory opinion wherein the court is free to ignore the agency's
> determination.  Rather, once the court properly refers a matter o
> specific issue to the agency, that agency's determination is bind
> upon the court and the parties (subject, of course, to appellate
> review through normal channels), and is not subject to collateral
> attack in the pending court proceeding.

Elkin v. Bell Tel. Co. of Pa., 420 A.2d 371, 376 (Pa. 1980) (footnotes omit

### 1. The Statutory Framework of the PUC.

"The PUC has long been recognized as the appropriate forum for the adj

issues involving the reasonableness, adequacy and sufficiency of public uti

Behrend v. Bell Telephone, 243 A.2d 346, 347 (Pa. 1968).

> The PUC has the power to 'prescribe as to service and facilities
> just and reasonable standards. . . to be furnished, imposed, obse
> and followed by any or all public utilities . . .' and upon findi
> . . 'that the service or facilities of any public utility are
> unreasonable, unsafe, inadequate, insufficient . . . ' the PUC 's
> determine and prescribe, by regulation or order, the reasonable,
> adequate, sufficient, service or facilities to be observed, furni
> enforced or employed . . . '

Elkin v. Bell Telephone, 420 A.2d 371, 374 (Pa. 1980), see 66 P.S. §§ 1182,

(repealed and replaced by 66 Pa. C.S. §§ 1504, 1505 (1978).  The Pennsylvan

Utility Law requires public utilities to file tariffs with the PUC.  See 66

§ 1302 (Purdon 1979 & Supp. 1995).  These tariffs are binding and dispositi

---

[0]     Following oral argument we asked the parties to file supplemental bri
issue.

33

rights and liabilities between the customer and the public utility.  <u>See</u> 66 §1303 (Purdon 1979).  The PUC has enforcement power over its tariffs and re matters that pertain to those tariffs are considered to be within the parti of the PUC.  <u>See</u> 66 Pa. C.S.A. § 501, <u>et. seq.</u> (Purdon 1979).

Accordingly, "[t]he PUC has long been recognized as the appropriate fo adjudication of issues involving the reasonableness, adequacy and sufficien utility services." <u>Elkin</u>, 420 A.2d at 374.  At oral argument, Teleconcepts it was challenging the reasonableness, adequacy and sufficiency of Bell's t service, and Bell admitted this point in its supplemental brief to this cou Supp. Brief at 1-2, 7.  Thus, it is not disputed that the subject matter of party complaint is within the jurisdiction of the PUC, and that agency is t forum to resolve the issues raised by that complaint. That determination, h necessary to our analysis, is not sufficient to end our inquiry.  Our inqui focus upon whether resolution of Teleconcepts' claim against Bell requires competence of the PUC.

> Courts should not be too hasty in referring a matter to an agency to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain o agency's 'expertise.' 'Expertise' is no talisman dissolving a cou jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility. .
> Therefore, where the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not b familiar, the proper procedure is for the court to refer the matt the appropriate agency. . . . Where, on the other hand, the matte not one peculiarly within the agency's area of expertise, but is which the courts or jury are equally well-suited to determine, th court must not abdicate its responsibility.

<u>Elkin</u>, 420 A.2d at 377.

### 2. The Need for the PUC's Expertise.

34

As noted above, issues that implicate a utility's tariff are deemed to

special expertise of the PUC. In addition we are guided by Elkin, and DeFra

Western Pa. Water Co., 453 A.2d 595, 596 (Pa. 1982). In Elkin, the court he

allegations that Bell negligently failed to furnish the customer "reasonabl

efficient service" with respect to three wide-area telephone service ("WATS

deliberately refused to furnish plaintiff with adequate directory assistanc

service, and negligently failed to furnish written telephone numbers for pr

customers of plaintiff fell within the PUC's area of expertise.  Elkin, 420

377.

By contrast, in DeFrancesco the court held that the allegation that fi

plaintiff's property because the city water company negligently failed to m

water pressure did not fall within the PUC's expertise and thus its primary

The court reasoned:

> The controversy now before us . . . is not one in which the gener
> reasonableness, adequacy or sufficiency of a public utility's ser
> is drawn into question.  Resolution of appellant's claims depende
> upon no rule or regulation predicated on the peculiar expertise o
> PUC, no agency policy, no question of service or facilities owed
> general public, and no particular standard of safety or convenien
> articulated by the PUC.  . . .Rather, . . . . [r]esolving the
> essential question of whether the utility failed to perform its
> mandated duties requires no recondite knowledge or experience and
> falls within the scope of the ordinary business of our courts.

DeFrancesco, 453 A.2d at 597.

Courts have routinely looked to Elkin and DeFrancesco to determine if

controversy implicated the special competence of the PUC.  See Optimum Imag

Phila. Elec. Co., 600 A.2d 553, 556-57 (Pa. Super. Ct. 1991) (allegations t

violated by the substandard and defective supply of electrical power brough

within the primary jurisdiction of the PUC); Ostrov v. I.F.T., Inc., 586 A.

(Pa. Super. Ct. 1991) (action did not come within the primary jurisdiction

35

plaintiff did not contend that medical examination provision of self-insura

violated the PUC's rules or regulations governing self-insurance motor carr

other PUC rule or regulation for self insurance)  Schriner v. Pa. Power & L

A.2d 1128, 1130-31 (Pa. Super. Ct. 1985) (citing DeFrancesco the court held

of "stray voltage" depends upon "no rule or regulation predicated upon the

expertise of the PUC . . ." and thus was not within the primary jurisdictio

Morrow v. Bell Tel. Co. of Pa., 479 A.2d 548, 551-52 (Pa. Super. Ct. 1984)

challenge to public utility's rates relating to toll charges and its servic

regarding deposits held to be within the primary jurisdiction of the PUC).

Here, the dispute centers around Bell's performance under its tariff a

technical deficiencies that my have existed in the dial tone generated by i

That complaint may rise or fall on the issue of the manner in which Bell co

obligation under its tariff to provide "reasonable, . . . efficient" servic

that can best determine Bell's compliance with that tariff is the PUC. In a

Teleconcepts' allegation of deficient service transcends the present contro

least potentially, calls into question the adequacy of Bell's service to th

public as Teleconcepts claims that the second dial tone was neither unique

nor COCOT owners. We must therefore be sensitive to the need for uniformity

consistency in agency policy, which further suggests that the PUC decide th

Teleconcepts' claim initially.  See Elkin, 420 A.2d at 377; Ostrov, 586 A.2

("matters involving the general reasonableness or adequacy of a utility's s

public are within the primary jurisdiction of the [PUC].").

### 3. The Effect of the Relief Sought

Nevertheless, despite the need for the PUC to determine liability on T

third-party claim, the PUC is not empowered to award damages, and Teleconce

damages in the nature of indemnification. See Elkin, 420 A.2d at 374 ("the

authority to award damages").  However, the Pennsylvania Supreme Court has

36

bifurcated procedure where, as here, a plaintiff sues a public utility base

latter's purported failure to provide adequate, reasonable or sufficient se

seeks damages as a remedy.  See Elkin, 420 A.2d at 375-76; Ostrov, 586 A.2d

this bifurcated procedure, the issue of liability is transferred to, and in

by, the PUC.  If necessary, the appropriate trial court thereafter determin

See Elkin, 420 A.2d at 377; DeFrancesco, 453 A.2d at 596 n.3.

Accordingly, "the doctrine of primary jurisdiction applies where the a

agency cannot provide a means of complete redress to the complaining party

dispute involves issues that are clearly better resolved in the first insta

administrative agency charged with regulating the subject matter of the dis

586 A.2d at 413.  The doctrine requires a court to transfer an issue that i

administrative expertise to the administrative agency charged with exercisi

discretion.  Richman Bros., 953 F.2d at 1435 n.3.  "Essentially, the doctri

workable relationship between the courts and administrative agencies wherei

appropriate circumstances, the courts can have the benefit of the agency's

within the agency's competence."  Elkin, 420 A.2d at 376.

In Optimum Image, supra, the plaintiff sued the Philadelphia Electric

("PECO") alleging that the utility "wrongfully, negligently, carelessly and

reasonable cause delivered, over an extended period of time, unreasonably d

electrical power" to plaintiff's business premises.  The trial court transf

determination of liability to the PUC.  The Pennsylvania Superior Court aff

> [Plaintiff alleges that] the electrical power supplied by PECO
> exceeded the ten percent variation allowed by PECO's tariff filed
> the PUC.  In addition, [plaintiff] . . . alleges that the power w
> which it was supplied was substandard and outside the regulatory
> requirements and that the problem it experienced was not investig
> with the proper equipment.
>                          . . . .
> In response, PECO contends that it at all times provided electric
> power in compliance with its tariff filed with the PUC and otherw
> furnished and maintained adequate, efficient, safe and reasonable
> services and facilities to [plaintiff].

37

<u>Id.</u> at 556-57. The controversy between Teleconcepts and Bell is analogous.

that the doctrine of primary jurisdiction required the district court to ut

bifurcated procedure established for resolving questions of liability where

sought in a matter involving the special expertise of the PUC. Thus, altho

district court had jurisdiction over the third-party claim, the court erred

the question of liability. That claim must be transferred to the PUC for s

determination. If the PUC concludes that Teleconcepts is entitled to indemn

Bell, the district court may then make an appropriate award to Teleconcepts

<u>Image,</u>, 600 A.2d at 557.

We are aware that language in some decisions of the United States Supr

our sister Courts of Appeals seems to suggest a contrary result here. For e

<u>Reiter v. Cooper</u>, 113 S. Ct. 1213 (1993) the Court stated:

> Referral of the issue to the administrative agency does not depri
> the court of jurisdiction; it has discretion to either retain
> jurisdiction or, if the parties would not be unfairly disadvantag
> to dismiss the case without prejudice.

113 S. Ct. at 1219. <u>See</u> <u>also</u>, <u>U.S. v. Philadelphia National Bank</u>, 83 S. Ct.

(comparing primary jurisdiction to a prudential doctrine of abstention and

primary jurisdiction merely postpones and does not preclude the exercise of

by a federal court), <u>Northwest Airlines, Inc. v. County of Kent, Mich.</u>, 114

(1994) (failure to brief primary jurisdiction resulted in waiving considera

doctrine), <u>Gross v. Baxter Healthcare Corp.</u>, 51 F.3d 703, 706 (7th Cir. 195

found the parties had waived any consideration of primary jurisdiction and

this respect, primary jurisdiction is quite different from subject matter

jurisdiction[]"), and <u>U.S. v. Henri</u>, 828 F.2d 526, 527 (9th Cir. 1987) ("th

primary jurisdiction, despite what the term may imply, does not speak of th

jurisdictional power of the federal courts[]"). However, none of these cas

the issue of the authority of a federal court to adjudicate a matter that a

legislature had placed within the exclusive domain of a state administrativ

Accordingly, our analysis here is consistent with the results reached in su

U.S. v. Western Pacific Railroad, 77 S. Ct. 161, 165 (1956). There, the cou

> [t]he doctrine of primary jurisdiction thus does 'more than presc
> the mere procedural timetable of the law suit.  It is a doctrine
> allocating the law making power over certain aspects' of commerci
> relations.  'It transfers from court to agency the power to deter
> some of the incidents of such relations.

77 S. Ct. at 166 (emphasis added). See also, Slocum v. Delaware, L. & W. R.

577 (1950), and Pennsylvania Railroad Co. v. Day, 79 S. Ct. 1322 (1959), an

Hotel and Casino, supra.

The Commonwealth of Pennsylvania has committed the issues raised by Te

claim against Bell to the exclusive jurisdiction of the Pennsylvania Public

Commission and a federal court can not amend state law by exercising supple

jurisdiction. Indeed, a contrary holding would mean that the federal courts

to decide matters of state law that courts in the affected state lack autho

resolve. Since the Supreme Court of Pennsylvania has held that "the Public

Commission has been vested by the legislature with exclusive original juris

of the issues which this suit requires us to resolve,  Behrend v. Bell Tele

A.2d 346, 347 (1968), we must remand to the district court for appropriate

Accordingly, we will reverse the district court's grant of summary jud

of Bell and remand so that the district court can transfer the third-party

PUC for a determination of liability.  The district court retains jurisdict

matter pending the liability determination by the PUC.[0]

---

[0]    We realize that after the district court disposes of the allocati
distance charges between MCI and Teleconcepts in accordance with this opini
will be left with only the third-party claim founded on state law.  It is f
court to decide whether to retain supplemental jurisdiction at that point,
the third-party claim pursuant to 28 U.S.C. § 1367(c)(3).

## III.

For the reasons stated above, we will affirm in part and reverse in pa

judgments of the district court, and remand this case to the district court

proceedings consistent with this opinion.

MCI Telecommunications Corp. v. Teleconcepts, Inc., No. 94-5426.

NYGAARD, Circuit Judge, concurring in part and concurring in the judgment.

I join the majority's opinion.[0]  I write separately, however, beca

40

the majority's holding with respect to primary jurisdiction is incorrect an

unnecessarily limit the jurisdiction of the federal courts.  Although I agr

majority's decision to apply primary jurisdiction analysis, I do not agree

in which it conflates that doctrine with the district court's constitutiona

subject matter jurisdiction to hear Teleconcepts' third-party claim.

I.

The majority, recognizing that neither party below raised the iss

nevertheless concludes that "we must . . . determine if the doctrine of pri

jurisdiction applies." Majority typescript at 34 (emphasis added); see id.

relies for this proposition on Greate Bay Hotel & Casino v. Tose, 34 F.3d 1

1994), in which we remarked that "when the legislature provides an agency w

primary jurisdiction,' it preempts the courts' original jurisdiction over t

matter."  Id. at 1230 n.5.  That opinion also stated that we heard the appe

are obliged to examine the subject matter jurisdiction of the district cour

1230 n.4.  Essentially, the majority treats dicta from Greate Bay as a hold

state legislature or court, by virtue of conferring "exclusive" primary jur

state administrative agency, divests an Article III federal court of its su

jurisdiction.  That treatment cannot withstand rigorous analysis, and, to t

majority adopts it,[0] I believe it errs.

A.

The majority recognizes that "language in some decisions . . . se

a contrary result here." Majority typescript at 42.  Indeed, a whole host o

for the proposition that primary jurisdiction (exclusive or otherwise) has

with subject matter jurisdiction. See Reiter v. Cooper, 507 U.S. 258, ____,

1213, 1220 (1993) ("Referral of the issue to the administrative agency does

41

the court of jurisdiction; it has discretion to either retain jurisdiction

parties would not be unfairly disadvantaged, to dismiss the case without pr

General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 43

325, 331 (1940) (district court had personal and subject matter jurisdictio

have stayed its hand pending determination of certain issues by the Interst

Commission); accord Northwest Airlines, Inc. v. County of Kent, Mich., 114

n.10 (1994) (primary jurisdiction, unlike subject matter jurisdiction, is w

Common Carrier, Inc. v. Baxter Healthcare Corp., 51 F.3d 703, 706 (7th Cir.

United States v. Henri, 828 F.2d 526, 528 (9th Cir. 1987) (per curiam) (pri

jurisdiction, despite the name, does not go to the jurisdictional power of

courts) (citing United States v. Bessemer & L.E. R.R., 717 F.2d 593, 599 (D

1983)); Oasis Pet. Corp. v. United States Dep't of Energy, 718 F.2d 1558, 1

Emer. Ct. App. 1983) (citing United States v. Philadelphia Nat'l Bank, 374

Ct. 1715 (1963)).

The majority acknowledges most of the above cases, but attempts t

them on the rationale that none of those cases "addressed the issue of the

federal court to adjudicate a matter that a state legislature had placed wi

exclusive domain of a state administrative agency."  Majority typescript at

distinction, that a state legislature's or court's actions may divest the f

of subject matter jurisdiction where the same action by Congress would not,

by the cases the majority cites.

In the first case relied on by the majority, United States v. Wes

Co., 352 U.S. 59, 77 S. Ct. 161 (1956), railroads sued the government in th

Claims to recover differences between the tariff rates they had been paid a

they believed were required on shipments of napalm bombs.  The issue was wh

tariff for gasoline in drums or the higher tariff for incendiary bombs appl

shipments. Neither party raised the issue of primary jurisdiction in the lo

the Supreme Court, on its own motion, considered the question of whether ex

jurisdiction was vested in the Interstate Commerce Commission.  Notably, th

Court gave for considering the issue sua sponte was comity, not subject mat

jurisdiction:

> Before this Court neither side has questioned the validity of the
> lower court's views [regarding primary jurisdiction]. Nevertheles
> because we regard the maintenance of a proper relationship betwee
> courts and the Commission in matters affecting transportation pol
> to be of continuing public concern, we have been constrained to
> inquire into this aspect of the decision.

Id. at 63, 77 S. Ct. at 165.  Its doctrinal discussion of primary jurisdict

likewise not cast in jurisdictional terms:

> The doctrine of primary jurisdiction, like the rule requirin
> exhaustion of administrative remedies, is concerned with promotin
> proper relationships between the courts and administrative agenci
> charged with particular regulatory duties. "Exhaustion" applies w
> a claim is cognizable in the first instance by an administrative
> agency alone; judicial interference is withheld until the
> administrative process has run its course. "Primary jurisdiction,
> the other hand, applies where a claim is originally cognizable in
> courts, and comes into play whenever enforcement of the claim req
> the resolution of issues which, under a regulatory scheme, have b
> placed within the special competence of an administrative body; i
> such a case the judicial process is suspended pending referral of
> issues to the administrative body for its views.

Id. at 63-64, 77 S. Ct. at 165 (citing General American Tank Car, 308 U.S a

Ct. at 331).[0]  I therefore conclude that when the Western Pacific Court spok

transferring "the power" to determine the parties' relations from the court

see majority typescript at 43, it was speaking of a jurisprudential deferen

on administrative rulemaking authority, not subject matter jurisdiction.

B.

Article III of the Constitution defines the outer limits of a fed

court's subject matter jurisdiction. By statute, Congress may choose to gra

short of those limits, for example, by requiring complete rather than minim

or by imposing jurisdictional amounts in diversity cases. Determining subj

jurisdiction is not a particularly complex task; as the Supreme Court has s

Constitution must have given to the court the capacity to take it, and an a

must have supplied it. . . ." Finley v. United States, 490 U.S. 545, 548, 1

2006 (1989) (quoting The Mayor v. Cooper, 6 Wall. 247, 252 (1868)). Thus, i

wishes to confer exclusive jurisdiction on a federal administrative agency

district courts of that jurisdiction, it would be within its constitutional

so, although it has not done so in the cases discussed above.

Under the Supremacy Clause, Congress may likewise confer exclusiv

jurisdiction on a federal court[0] or administrative agency and divest the sta

what would otherwise be within their subject matter jurisdiction. This unr

principle explains the "exclusive" primary jurisdiction of the National Rai

Board found by the Supreme Court in two of the cases the majority relies up

Pennsylvania R.R. Co. v. Day, 360 U.S. 548, 552, 79 S. Ct. 1322, 1325 (1959

Delaware, L. & W. R.R. Co., 339 U.S. 239, 244, 70 S. Ct. 577, 580 (1950).

A state legislature may also limit the jurisdiction of its own st

enacting a statute vesting exclusive primary jurisdiction in a state board

subject of course to the confines of state law and the due process requirem

Fourteenth Amendment. See Greate Bay, 34 F.3d at 1230 & n.5 (dictum); Behr

Tel. Co., 431 Pa. 63, 243 A.2d 346, 347–48 (1968). Thus, I have no quarrel

majority's conclusion that a Pennsylvania state court would have no power t

claim.

C.

It does not follow, however, that a <u>state</u> may by statutory or dec restrict the subject matter jurisdiction of the <u>federal</u> courts.  It is axio because its subject matter jurisdiction can be conferred or withdrawn only federal court must look only to federal, not state, law to determine that j <u>non</u>, even when the substantive right at issue is a creature of the state. <u>Jacoby</u>, 646 F.2d 415, 419 (9th Cir. 1981); <u>Markham v. City of Newport News,</u> 713-16 (4th Cir. 1961).  That a state simply has no power to divest a feder congressionally conferred subject matter jurisdiction, has been settled law century.  <u>See, e.g.,</u> <u>Waterman v. Canal-Louisiana Bank & Trust Co.,</u> 215 U.S. S. Ct. 10, 12 (1909); <u>Land Title & Trust Co. v. Asphalt Co.,</u> 127 F. 1, 19 ( (dictum).  Modern caselaw continues in full accord with the early cases.  <u>S</u> <u>Brown, Inc.,</u> 807 F.2d 783, 784 (9th Cir. 1987); <u>Dominion Nat'l Bank v. Olse</u> 108, 116 n.2 (6th Cir. 1985); <u>Beach v. Owens-Corning Fiberglas Corp.,</u> 728 F (7th Cir.), <u>cert. denied,</u> 469 U.S. 825, 105 S. Ct. 104 (1984); <u>Mullen v. Ac</u> <u>Co.,</u> 705 F.2d 971, 975 (8th Cir.) (citing cases), <u>cert. denied,</u> 464 U.S. 82 101 (1983); <u>Begay v. Kerr-McGee Corp.,</u> 682 F.2d 1311, 1315 (9th Cir. 1982) <u>Duchek,</u> 646 F.2d at 419 & n.4 (citing cases, quoting <u>Railway Co. v. Whitton</u> U.S. (13 Wall.) 270, 286 (1871)); <u>Greyhound Lines, Inc. v. Lexington State</u> <u>Co.,</u> 604 F.2d 1151, 1154-55 (8th Cir. 1979); <u>Markham,</u> 292 F.2d at 713-16; <u>I</u> <u>Seafood (USA) Inc.,</u> 743 F. Supp. 281, 285-86 (D. Del. 1990) (Roth, J.) ("a that creates a remedy or type of proceeding cannot narrow the jurisdiction courts") (quoting <u>Land Title & Trust,</u> 127 F. at 19-20); <u>Codos v. National D</u> <u>Corp.,</u> 711 F. Supp. 75, 77-78 (E.D.N.Y. 1989); <u>Kanouse v. Westwood Obstetri</u> <u>Gynecological Assocs.,</u> 505 F. Supp. 129, 129 (D.N.J. 1981) (Brotman, J.).

45

Moreover, this inviolability of federal subject matter jurisdicti

when the substantive right at issue is created solely by state law and is e

before a state administrative agency.  See Webb, 807 F.2d at 784 (exclusive

state workers' compensation fund); Beach, 728 F.2d 407 (subject matter juri

even though state law purports to vest exclusive jurisdiction in Industrial

Board); Begay, 682 F.2d at 1315-17 (workers' compensation system); Liberty

v. K.A.T., Inc., 855 F. Supp. 980, 984-85 (N.D. Ind. 1994) (failure to exha

administrative remedies); Jones v. National Union Fire Ins. Co., 664 F. Sup

(N.D. Ind. 1987) (Industrial Disputes Board).

Recent opinions of this court have been somewhat less rigorous an

their analysis of subject matter jurisdiction than the caselaw set forth ab

nevertheless in basic accord with it.  In Edelson v. Soricelli, 610 F.2d 13

1979), the issue was "whether a federal court may entertain a Pennsylvania

malpractice claim under the diversity statute, 28 U.S.C. § 1332, before the

initially taken recourse to the state Arbitration Panels for Health Care. .

132.  Such recourse was "a condition precedent to entry into the state judi

Id. at 134.  In the two cases consolidated on appeal, "the district courts

although claimants made the necessary averments for subject matter jurisdic

federal courts, exercise of diversity jurisdiction would be improper until

arbitrated under the state arbitration procedure." Id. at 133 (emphasis add

omitted).  We affirmed, notwithstanding the ruling of one of the district c

Pennsylvania arbitration panel had exclusive primary jurisdiction.  Id.

In the later case of Hamilton v. Roth, 624 F.2d 1204 (3d Cir. 198

prisoner sued prison doctors for cruel and unusual punishment under the Eig

As a pendent claim under the doctrine of United Mine Workers v. Gibbs, 383

Ct. 1130 (1966), he also brought a claim for malpractice, but without submi

Pennsylvania malpractice arbitration panel.  Id. at 1205-06.  In the conclu

of our opinion, we did state that "the district court was without subject m

jurisdiction to hear Hamilton's related medical malpractice claim."  624 F.

This statement was not a part of the holding, but was at most an unguarded

words, because earlier in the opinion we stated:

> There is no question that we have power under Gibbs to consider t
> claim.  But Gibbs also requires that the federal court determine
> pendent claims in accordance with the applicable state law.  Here
> applicable state law requires that a malpractice claim be submitt
> arbitration before being considered in court.  Thus, while a fede
> court has the power under the Gibbs test of pendent jurisdiction
> hear a malpractice claim, it may exercise this power only after t
> claim has been submitted to arbitration. We have so held first in
> Edelson and now here.

Id. at 1210 n.6.

Taken together in the light of the abundant caselaw reviewed abov

Hamilton teach that, while the district court had subject matter jurisdicti

Teleconcepts third-party claim, it should have refrained from exercising it

decision in the proceedings before the PUC.  See Cheyney State College Facu

Hufstedler, 703 F.2d 732, 736 (3d Cir. 1983) (likening primary jurisdiction

(quoting Philadelphia Nat'l Bank, 374 U.S. at 353, 83 S. Ct. at 1736).  Thi

because the exclusive primary jurisdiction of the PUC deprived the district

subject matter jurisdiction conferred on it by the Constitution and Congres

the PUC's exclusive primary jurisdiction is part of the substantive law of

law which we are bound to apply under the Erie doctrine.[0]  See Edelson, 610

Many courts have followed this approach, refraining from exercisi

pending completion of appropriate administrative proceedings.  In Webb, for

court opined that, rather than dismiss for lack of subject matter jurisdict

47

> [i]t is more accurate to characterize the reason for the dismissa
> the complaint as the court's belief that the complaint, as a matt
> law, did not state a claim upon which relief could be granted bec
> the exclusive remedy provision of [the state workers' compensatio
> statute] barred a common law negligence claim."

807 F.2d at 784-85. Likewise, in Beach, the court opined:

> Despite our ruling that the district court had jurisdiction
> entertain this suit, we affirm the entry of summary judgment beca
> Indiana has eliminated the cause of action asserted by the plaint
> The Indiana law vesting exclusive jurisdiction over disputes betw
> employees and their employers in the disputes board operates to c
> state court doors to the plaintiffs. The state's denial of a judi
> remedy in this case is a denial of the substantive right asserted
> the plaintiffs. An employee or his representatives or kin may ma
> claim other than before the Industrial Disputes Board. According
> the state courts have no jurisdiction over the plaintiffs' claims
> the plaintiffs therefore have no claim to press in this federal
> action, which depends entirely upon state law.

728 F.2d at 409 (citing Woods v. Interstate Realty Co., 337 U.S. 535, 538,

1237 (1949); Begay, 682 F.2d at 1316-19). Accord Begay, 682 F.2d at 1316-1

dismissed for failure to state any claim upon which the state court could g

Markham, 292 F.2d at 717-18 ("Erie doctrine does not extend to matters of j

Erie held not to require nonexercise of jurisdiction under circumstances of

664 F. Supp. at 447 (case dismissed for failure to state a claim when relie

obtained only from state industrial board); Kanouse, 505 F. Supp. at 132 (d

exercise of jurisdiction pending completion of medical malpractice panel re

D.

That brings me to the scope of the holding of Greate Bay, because

holds as the majority believes it does, our Internal Operating Procedure 9.

follow it, regardless of whether I consider it jurisprudentially sound. In

casino sued a gambler to enforce a settlement agreement concerning his gami

gambler counterclaimed, alleging that the casino allowed him to gamble alth

48

was intoxicated.  On the counterclaim, the jury found for the casino, and t
filed a motion for a new trial, which was denied.  He then appealed that ru
casino cross-appealed, arguing that the district court did not have jurisdi
exclusive jurisdiction to order restitution was vested with the Casino Cont
and that, therefore, "the district court should not have exercised jurisdic
counterclaim."  34 F.3d at 1230 (emphases added).

We affirmed the denial of the new trial.  Id. at 1235-37.  The Gr
stated in a footnote that it was "obliged to examine the subject matter jur
the district court," id. at 1230 n.4, and it engaged in a detailed analysis
primary jurisdiction, holding that jurisdiction was not exclusive.  Id. at
that determination, the panel did not need to, and indeed did not, engage i
of the effect that a finding of exclusive primary jurisdiction would have o
court's power to grant restitution or even to hear the case.  Once the cour
that the Commission did not have exclusive primary jurisdiction, it determi
motion for new trial was properly denied by the district court.

I therefore conclude that footnote 4 of Greate Bay, which speaks
district court's subject matter jurisdiction, is dictum and should not be f
To the extent the majority relies on it for its holding, it places more wei
Bay than it will bear, placing Greate Bay in conflict with our opinions in
Hamilton, and the Supreme Court's opinion in Reiter and the cases discussed

E.

In sum, I conclude that, although the district court has subject
jurisdiction over Teleconcepts' third-party claim, the exclusive primary ju
the PUC is part of the substantive law of Pennsylvania.  Accordingly, to th

49

Pennsylvania state court is unable to grant relief at this time, an <u>Erie</u>-bo

court likewise may not ordinarily grant it.

## II.

## A.

I use "ordinarily" to refer to the posture in which this type of comes before a district court--the situation in which one or more of the pa the issue of exclusive primary jurisdiction as a bar to relief in the feder such a case, the court should abstain from exercising its jurisdiction pend of proceedings before the administrative agency.  This case, however, is di exclusive primary jurisdiction was not litigated in the district court.

If exclusive primary jurisdiction did divest the district court's jurisdiction, the majority would be undeniably correct in reaching the issu for the first time on appeal.  As I have already shown, subject matter juri implicated; thus, we would not normally reach the issue at this stage of th

## B.

In primary jurisdiction cases, however, we have discretion to con own motion whether that doctrine applies.  <u>See</u> <u>Northwest Airlines</u>, 114 S. C <u>Western Pacific</u>, 352 U.S. at 63, 77 S. Ct. at 165.  In <u>Western Pacific</u>, the reached that issue because of the public concern over the proper relationsh courts and the ICC.  352 U.S. at 63, 77 S. Ct. at 165.  There, the courts' of public tariffs had the potential to differ significantly from those of t charged with their regulation, with the potential of causing uncertainty an harm to either shippers or railroads.  On the other hand, in <u>Northwest Airl</u> which the Court did not consider the doctrine of primary jurisdiction, at i rates a county airport authority charged airlines.

This case, like <u>Western Pacific</u>, involves public tariffs, which a

in favor of the majority's decision to examine the primary jurisdiction iss

Discretion, of course, is exactly that--a choice of decisions, not a rule o

should not be inferred that every case involving a tariff requires the same

this case, however, I agree with the majority's decision to reach the issue

primary jurisdiction (though not with its jurisdictional rationale).[0]

I therefore concur in part, and concur in the judgment.